**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| GREENE, *et al.*,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES AGENCY FOR<br>INTERNATIONAL DEVELOPMENT, *et al.*,<br><br>    Defendants. | Civil Action No. 1:25-cv-4217-SLS |

**DEFENDANTS' MEMORANDUM IN SUPPORT**
**OF THEIR MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

BACKGROUND .............................................................................................................. 3

    I. Statutory Background ............................................................................................. 3

    II.   Factual Background ............................................................................................. 4

LEGAL STANDARD ...................................................................................................... 7

ARGUMENT .................................................................................................................... 7

    I. PLAINTIFFS FAIL TO SHOW THEY HAVE EXHAUSTED ANY OF THEIR CLAIMS (ALL COUNTS). ......................................................................................... 8

    II.   PLAINTIFFS' ADMINISTRATIVE LEAVE ACT, *MALA FIDE* RIF, *ULTRA VIRES*, AND APA COUNTS (COUNTS II, IV, VI, AND VII) ARE STATUTORILY PRECLUDED. ...........................................................................................................11

    A.   The CSRA Precludes Jurisdiction over Counts Two, Four, Six, and Seven................. 12

    B.   The CSRA Likewise Precludes Jurisdiction over Plaintiffs' "*Accardi*" Claim (Part of Count Five). ......................................................................................................... 15

    C.   The United States Has Not Waived Sovereign Immunity With Respect to Administrative Leave Act Claims. (COUNT II). ..................................................... 16

    D.   Plaintiffs Cannot Show Standing to Sue the State Department, OPM, or OMB Defendants. ............................................................................................................. 18

    III.   PLAINTIFFS FAIL TO STATE A CLAIM AS TO ANY COUNT. ........................... 21

    A.   Count I Fails to State a Claim Under Title VII. ....................................................... 22

        i.   *Title VII does not permit Plaintiffs' "advocacy" theory of discrimination.* .............. 23

        ii.   *Plaintiffs were not disparately impacted on the basis of a protected class.* ............. 25

*iii.    Plaintiffs were not subjected to a hostile work environment.* ................................... 26

B.    Administrative Leave Act (Count II)............................................................................ 28

C.    First Amendment Retaliation Claims (Count III)......................................................... 30

D.    Plaintiffs Fail to State a Claim that They were Wrongfully Terminated through a

"Sham" RIF (Count IV). .................................................................................................... 34

E.    Plaintiffs Do Not Plausibly Allege Constitutional Due Process Violations. (COUNT

V)……………………………………………………………………………………...35

CONCLUSION.................................................................................................................... 37

**TABLE OF AUTHORITIES**

**Cases**

*Agnew v. Gov't of the Dist. of Columbia,*

   920 F.3d 49 (D.C. Cir. 2019)................................................................... 14

*Am. Fed. Gov. Emps. v. U.S. Dep't of Educ.,*

   --- F. Supp. 3d ---, 2025 WL 3123707 (D.D.C. Nov. 7, 2025)...................................... 8

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump,*

   929 F.3d 748 (D.C. Cir. 2019)................................................................... 12

*Am. Nat'l Ins. Co. v. FDIC,*

   642 F.3d 1137 (D.C. Cir. 2011)................................................................... 6

*Andrade v. Lauer,*

   729 F.2d 1475 (D.C. Cir. 1984)................................................................... 8

*Aref v. Lynch,*

   833 F.3d 242 (D.C. Cir. 2016)................................................................... 16

*Ashcroft v. Iqbal,*

   556 U.S. 662 (2009)................................................................... 6

*Barrett v. Whirlpool Corp.,*

   556 F.3d 502 (6th Cir. 2009)................................................................... 14

*Bd. of Governors of the Fed. Reserve Sys. v. MCorp Fin., Inc.,*

   502 U.S. 32 (1991)................................................................... 11

*Bell Atl. Corp. v. Twombly,*

   550 U.S. 544 (2007)................................................................... 6

*Bostock v. Clayton Cnty.*,

    590 U.S. 644 (2020)................................................................................................ 14

*Bowen v. Massachusetts*,

    487 U.S. 879 (1988)................................................................................................ 12

*Bowie v. Maddox*,

    653 F.3d 45 (D.C. Cir. 2011)................................................................................ 16

*Burford v. Yellen*,

    246 F. Supp. 3d 161 (D.D.C. 2017) .................................................................... 15

*Butler v. West*,

    164 F.3d 634 (D.C. Cir. 1999)................................................................................ 3

*Changji Esquel Textile Co. v. Raimondo*,

    40 F.4th 716 (D.C. Cir. 2022) .............................................................................. 11

*Coffman v. Glickman*,

    328 F.3d 619 (10th Cir. 2003).............................................................................. 7

*Convertino v. DOJ*,

    393 F. Supp. 2d 42 (D.D.C. 2005) ...................................................................... 8

*DaimlerChrysler Corp. v. Cuno*,

    547 U.S. 332 (2006).............................................................................................. 5

*Davis v. Dist. of Columbia*,

    925 F.3d 1240 (D.C. Cir. 2019)............................................................................ 16

*Doak v. Johnson*,

    798 F.3d 1096 (D.C. Cir. 2015)............................................................................ 8

*DOJ v. FLRA*,

    981 F.2d 1339 (D.C. Cir. 1993)..............................................................................................11

*Elm 3DS Innovations, LLC v. Lee*,

    No. 1:16-CV-1036, 2016 WL 8732315 (E.D. Va. Dec. 2, 2016) ............................................. 12

*FDIC. v. Meyer*,

    510 U.S. 471 (1994)................................................................................................................. 9

*Fed. Express Corp. v. U.S. Dep't of Com.*,

    39 F.4th 756 (D.C. Cir. 2022) ...............................................................................................11

*Fed. Hous. Admin. v. Burr*,

    309 U.S. 242 (1940)................................................................................................................. 9

*Frith v. Whole Foods Market, Inc.*,

    38 F.4th 263 (1st Cir. 2022) ................................................................................................. 14

*Garcetti v. Ceballos*,

    547 U.S. 410 (2006)......................................................................................................... 16, 17

*Garcia v. Vilsack*,

    563 F.3d 519 (D.C. Cir. 2009)............................................................................................... 12

*Glines v. Dep't of Def.*,

    No. 24-CV-1222, 2025 WL 1207085 (D.D.C. Apr. 25, 2025)..................................................... 7

*Graham v. Ashcroft*,

    358 F.3d 931 (D.C. Cir. 2004)......................................................................................... 12, 13

*Greater New Orleans Fair Hous. Action Ctr. v. HUD*,

    639 F.3d 1078 (D.C. Cir. 2011)............................................................................................. 15

*Hamilton v. Geithner*,

  666 F.3d 1344 (D.C. Cir. 2012) ...................................................................... 7

*Hornsby v. Thompson*,

  No. 22-cv-1472, 2023 WL 196185 (D.D.C. Jan. 17, 2023) ...................................... 7

*Hornsby v. Watt*,

  217 F. Supp. 3d 58 (D.D.C. 2016) ................................................................ 13

*HTC Corp. v. IPCom GmbH & Co., KG*,

  671 F. Supp. 2d 146 (D.D.C. 2009) ............................................................... 18

*James v. Von Zemenszky*,

  284 F.3d 1310 (Fed.Cir. 2002) ..................................................................... 2

*Jerome Stevens Pharms., Inc. v. FDA*,

  402 F.3d 1249 (D.C. Cir. 2005) .................................................................... 6

*Kaempe v. Myers*,

  367 F.3d 958 (D.C. Cir. 2004) ..................................................................... 6

*Kelly v. Raimondo*,

  No. 20-cv-3203, 2022 WL 14807447 (D.D.C. Oct. 26, 2022) ............................... 7, 8

*Kokkonen v. Guardian Life Ins. Co. of Am.*,

  511 U.S. 375 (1994) ................................................................................. 5

*Lane v. Pena*,

  518 U.S. 187 (1996) ................................................................................. 9

*Loeffler v. Frank*,

  486 U.S. 549 (1988) ................................................................................. 9

*McIver v. Mattis*,

    318 F. Supp. 3d 245 (D.D.C. 2018) ................................................................................ 7

*Media Matters for Am. v. Paxton*,

    138 F.4th 563 (D.C. Cir. 2025) ................................................................................ 16

*Nyunt v. Chairman, Broad. Bd. of Governors*,

    589 F.3d 445 (D.C. Cir. 2009).................................................................................11

*Perry Cap. LLC v. Mnuchin*,

    864 F.3d 591 (D.C. Cir. 2017).................................................................................. 12

*Perry v. MSPB*,

    582 U.S. 420 (2017)................................................................................................ 3

*Perry v. Raimondo*,

    101 F.4th 55 (D.C. Cir. 2024) ................................................................................ 7

*Robb v. Rollins*,

    No. 21-CV-2056 (JDB/GMH), 2025 WL 1580849 (D.D.C. June 4, 2025) ........................... 7, 8

*Robb v. Rollins*,

    No. CV 21-2056 (JDB/GMH), 2025 WL 2851638 (D.D.C. Oct. 8, 2025)................................ 7

*Saulsberry v. Bondi*,

    No. 23-CV-03483 (APM), 2025 WL 958368 (D.D.C. Mar. 31, 2025)..................................... 7

*Sebunya v. Mayorkas*,

    No. 21-cv-780, 2024 WL 1076809 n.8 (D.D.C. Mar. 8, 2024).............................................. 14

*Seed v. Env't Prot. Agency*,

    100 F.4th 257 (D.C. Cir. 2024) .............................................................................. 10

*Shanks v. Int'l Union of Bricklayers & Allied Craftworkers*,

    134 F.4th 585 (D.C. Cir. 2025) ...................................................................... 15

*Steadman v. Gov., U.S. Soldiers' & Airmen's Home*,

    918 F.2d 963 (D.C. Cir. 1999)......................................................................... 8

*Thompson v. Dist. of Columbia*,

    530 F.3d 914 (D.C. Cir. 2008)....................................................................... 17

*Trudeau v. FTC*,

    456 F.3d 178 (D.C. Cir. 2006)........................................................................11

*Turner v. U.S. Agency for Glob. Media*,

    502 F. Supp. 3d 333 (D.D.C. 2020) ................................................................ 8

*United States v. Mitchell*,

    463 U.S. 206 (1983)......................................................................................... 9

*United States v. Nordic Vill. Inc.*,

    503 U.S. 30 (1992)........................................................................................... 9

*United States v. Sherwood*,

    312 U.S. 584 (1941)......................................................................................... 9

*Versata Dev. Corp. v. Rea*,

    959 F. Supp. 2d 912 (E.D. Va. 2013) ........................................................... 12

*Weaver v. U.S. Info. Agency*,

    87 F.3d 1429 (D.C. Cir. 1996)........................................................................ 8

*Webster v. Del Toro*,

    49 F.4th 562 (D.C. Cir. 2022) ......................................................................... 7

*Wilburn v. Robinson,*

    480 F.3d 1140 (D.C. Cir. 2007)..................................................................................... 17

*Winder v. Erste,*

    566 F.3d 209 (D.C. Cir. 2009)..................................................................................... 16

**Statutes**

5 U.S.C. § 704....................................................................................................................11

5 U.S.C. § 7703(b)(1)(A)................................................................................................ 2, 3

5 U.S.C. § 7701................................................................................................................ 2

5 U.S.C. § 7702................................................................................................................ 3

5 U.S.C. § 6329a.............................................................................................................. 9

29 U.S.C. § 633a(b) ........................................................................................................ 10

42 U.S.C. § 2000e-3(a) ................................................................................................... 14

42 U.S.C. § 2000e-16....................................................................................................3, 13

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ..................................................................... 1, 5

Federal Rule of Civil Procedure 12(b)(6) ..................................................................... 2, 6

**Regulations**

5 C.F.R. § 351.605 ..................................................................................................... 19, 20

5 C.F.R. § 351.901 ......................................................................................................... 2

5 C.F.R. § 630.1404(a)................................................................................................... 10

5 C.F.R. § 1201.154(b)(2) .............................................................................................. 3

5 C.F.R. § 1201.175 ....................................................................................................... 3

29 C.F.R. § 1614.302(a).................................................................................................. 3

29 C.F.R. § 1614.310 ...................................................................................................... 3

29 C.F.R. § 1614.105(a)................................................................................................. 3

*Ending Illegal Discrimination and Restoring Merit-Based Opportunity*,

    Exec. Order No. 14,173, 90 Fed. Reg. 8633 (Jan. 21, 2025)....................................... 4

*Ending Radical and Wasteful Government DEI Programs and Preferencing*,

    Exec. Order No. 14,151, 90 Fed. Reg. 8339 (Jan. 20, 2025)....................................... 4

*Reevaluating and Realigning United States Foreign Aid*,

    Exec. Order No. 14,169, 90 Fed. Reg. 8619 (Jan. 20, 2025)....................................... 4

**Other Authorities**

Mem. from Jeremy Lewin, PTDO Deputy Adm'r & COO, Dep't of State, to All USAID Pers.

    (Mar. 28, 2025), https://www.politico.com/f/?id=00000195-de57-dc25-a3b7-deffc6eb0000.. 15

**INTRODUCTION**

Plaintiffs are three former career civil service employees at the United States Agency for International Development ("USAID") who were removed in 2025 under agency-wide RIFs carried out to implement the President's Executive Orders realigning United States foreign aid and terminating, subject to applicable law, federal Diversity, Equity, and Inclusion ("DEI") initiatives. Plaintiffs allege that in removing them, USAID violated the First Amendment and the Due Process Clause, as well as numerous statutes and regulations: Title VII, the Civil Service Reform Act of 1978 ("CSRA"), the Administrative Leave Act, the Administrative Procedure Act ("APA"), and various internal regulations governing RIFs. Not content seeking relief against their former employing agency, Plaintiffs also sue the State Department, the U.S. Office of Management and Budget ("OMB"), the U.S. Office of Personnel Management ("OPM"), the U.S. DOGE Service ("USDS"), and the confirmed or acting heads of those agencies and entities. Against this panoply of Defendants, Plaintiffs seek sweeping relief, including injunctive and declaratory relief, invalidating the challenged "guidance, orders, and directions that lead to Plaintiffs' [] terminations." But there is no basis for any relief, much less the sweeping relief Plaintiffs seek. The Court should dismiss Plaintiffs' Complaint for lack of subject-matter jurisdiction and failure to state a claim on at least three broad grounds.

*First*, all of Plaintiffs' claims should be dismissed for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) because they have failed to allege—much less establish—that they have administratively exhausted all their claims before the Merit Systems Protection Board ("MSPB"). Under the CSRA's comprehensive administrative-judicial review scheme, Plaintiffs may only sue in district court if they have sufficiently exhausted their statutorily defined "mixed case" appeals before the MSPB. Not only that; their Complaint must sufficiently

1

allege exhaustion on a claim-by-claim basis to satisfy their burden of establishing jurisdiction at the pleading stage under Rule 12(b)(1).  Their Complaint says nothing to that effect other than the barest of formulaic legal recitations.  That does not suffice to satisfy their pleading burden.

*Second*, many of Plaintiffs' claims should be dismissed on additional jurisdictional grounds, including absence of a waiver of sovereign immunity and CSRA preclusion.

*Third,* all of Plaintiffs' claims should be dismissed for failure to state a claim on which relief may be granted under Federal Rule of Civil Procedure 12(b)(6).  Plaintiffs fail to plead a First Amendment retaliation claim because they do not plausibly allege that they engaged in any protected First Amendment activity or that USAID perceived them to have done so.  They also fail to allege any violation of Title VII, despite advancing both "advocacy" and disparate impact theories, that would suffice to state a claim under Rule 12(b)(6).  Title VII does not recognize Plaintiffs' "advocacy" theory, and the allegations in the Complaint are too threadbare to support a disparate impact theory.  For the same reason, Plaintiffs' claims that Defendants' alleged violations of USAID internal regulations deprived them of due process fail, as does their apparent liberty interest claim under the Due Process Clause.  And finally, Plaintiffs fail to identify any procedure, protection, or right under the CSRA that Defendants allegedly violated.

For all these reasons, the Court should dismiss Plaintiffs' Complaint under Rules 12(b)(1) and 12(b)(6).

2

**BACKGROUND**

I.      **Statutory Background**

Former federal employees may challenge their removals through a reduction-in-force

(RIF)[1] under the administrative and judicial review provisions of the Civil Service Reform Act of

1978 (CSRA).  *See* 5 U.S.C. §§ 7701, 7702, 7703; *see also* 5 C.F.R. § 351.901 (providing that

"[a]n employee who has been . . . separated . . . by a reduction in force action may appeal to the

[MSPB]").  The United States Court of Appeals for the Federal Circuit generally has exclusive

jurisdiction to review any final administrative order.  5 U.S.C. § 7703(b)(1)(A).  But a district court

may have jurisdiction over statutorily defined "mixed cases"—those that involve allegations of

both discrimination and personnel actions appealable to the MSPB under the CSRA's Chapter 75.

*Id*. § 7703(b)(2); *see also id.* § 7702(a)(1)(B); 42 U.S.C. § 2000e-16(c); *Perry v. MSPB*, 582 U.S.

420, 422-23 (2017).

To bring a mixed case, an employee must first elect and pursue an administrative remedy

under the CSRA.  At this stage, the employee "can choose between filing a 'mixed case complaint'

with her agency's [Equal Employment Opportunity] office and filing a 'mixed case appeal' directly

with the MSPB."  *Butler v. West*, 164 F.3d 634, 638 (D.C. Cir. 1999); *see also* 29 C.F.R. §

1614.302(a), (b).  If the employee files a mixed case complaint and the Equal Employment

Opportunity (EEO) office issues an adverse decision, the employee may appeal to the MSPB or

file suit in district court within 30 days of the adverse decision.  29 C.F.R. §§ 1614.302(d)(1)(ii),

(d)(3), 1614.310(a).  The employee may also appeal to the MSPB or file suit if the EEO office fails

to issue a decision within 120 days.  5 U.S.C. §§ 7702(e)(1)(A), (e)(2); 29 C.F.R. §§

---

[1] A RIF is "an administrative procedure[s] by which agencies eliminate jobs and reassign or separate employees who occupied the abolished positions." *James v. Von Zemenszky*, 284 F.3d 1310, 1314 (Fed. Cir. 2002).

3

1614.302(d)(1)(i), 1614.310(g); 5 C.F.R. § 1201.154(b)(2).  If the employee elects instead to pursue a mixed case appeal with the MSPB, as Plaintiffs have here, she may file suit in district court if the MSPB either decides an appeal adversely to the employee or fails to issue a decision after 120 days.  5 U.S.C. §§ 7702(e)(1)(B), 7703(b); 5 C.F.R. § 1201.175; 29 C.F.R. § 1614.310(b).

A plaintiff may also proceed in district court by asserting only discrimination claims under Title VII.  42 U.S.C. § 2000e-16(c).  Before filing in district court or pursuing an Equal Employment Opportunity Commission (EEOC) appeal, an employee generally must first initiate the agency EEO process by contacting an EEO counselor and then filing a formal complaint with the agency.  *See, e.g.*, 29 C.F.R. §§ 1614.105(a), 1614.106(a)-(b), 1614.407.

## II.    Factual Background

Plaintiffs are three former employees of the United States Agency for International Development ("USAID").  Each alleges that they were separated from the federal service under a RIF implemented by USAID in response to Executive Orders 14169, 14151, and 14173.  *See* Compl. ¶¶ 18–19, 68–69; *id*., Ex. 1 at 1; *see also Reevaluating and Realigning United States Foreign Aid*, Exec. Order No. 14,169, 90 Fed. Reg. 8619 (Jan. 20, 2025); *Ending Radical and Wasteful Government DEI Programs and Preferencing*, Exec. Order No. 14,151, 90 Fed. Reg. 8339 (Jan. 20, 2025); *Ending Illegal Discrimination and Restoring Merit-Based Opportunity*, Exec. Order No. 14,173, 90 Fed. Reg. 8633 (Jan. 21, 2025).  Among other things, the Executive Orders at issue directed USAID to review and determine "whether to continue, modify, or cease" individual foreign assistance programs, E.O. 14169, 90 Fed. Reg. at 8619; to "terminate, to the maximum extent allowed by law, all DEI, DEIA, and 'environmental justice' offices and positions," E.O. 14151, 90 Fed. Reg at 8339; and to "terminate all discriminatory and illegal

preferences, mandates, policies, programs, activities, guidance, regulations, enforcement actions, consent orders, and requirements," E.O. 14173, 90 Fed. Reg at 8633.

All three Plaintiffs allege they filed mixed case appeals with the MSPB. Compl. at 3. Each Plaintiff alleges that no final decision was reached within 120 days. *Id.* at 3 n.2. Plaintiffs filed suit on December 3, 2025. *Id.* at 1. Defendants sought and were granted an extension to answer Plaintiffs' Complaint until April 30, 2026. Extension Mot., ECF No. 9; Or., ECF No. 10.

Plaintiffs assert seven Counts, Compl. ¶¶ 324–432, directed against five federal agencies or entities, plus the heads of those agencies or entities in their official capacities:

- USAID and the State Department (plus Secretary of State Marco Rubio and Deputy Administrator Jeremy Lewin);

- The United States Office of Management and Budget ("OMB") (plus Director Russell Vought);

- The United States Office of Personnel Management ("OPM") (plus Director Scott Kupor); and

- what Plaintiffs characterize in their case caption and complaint at "the United States Department of Government Efficiency," or "DOGE" (plus its alleged Acting Administrator, Amy Gleason).[2]

ECF No. 1. The complaint alleges seven Counts, some of which appear to include more than one claim:

- **Count I:** Plaintiffs assert that Defendants violated Title VII of the Civil Rights Act, by removing them from federal service based on their "actual or perceived support for the Civil Rights Act and the concept of Equal Employment Opportunity." Compl. ¶ 338. Plaintiffs further assert Defendants violated the Rehabilitation Act

---

[2] Defendants note that "United States Department of Government Efficiency" or "DOGE" is not a proper defendant as it is not an agency. Plaintiffs are likely referring to the "United States DOGE Service" or "USDS" which was established in the Executive Office of the President pursuant to Executive Order 14,158. *See* Exec. Order 14,158, *Establishing and Implementing the President's "Department of Government Efficiency"*, 90 Fed. Reg. 8,441 (Jan. 20, 2025) (§ 3(a) establishing the "United States DOGE Service (USDS)"; § 3(b) establishing a "USDS Administrator" reporting to the "White House Chief of Staff.").

5

of 1973 by terminating Plaintiffs who "were advocates for the rights of persons in protected classes, including . . . disability status." *Id.* ¶ 333.  In the same count, Plaintiffs also allege that Defendants' actions had a disparate impact on protected classes, *id.* ¶ 344, and that Plaintiffs are members of a protected class—women, *id.* ¶ 150, and that Defendants created a "hostile work environment that no reasonable employee . . . could believe would not result in their . . . termination." *Id.* ¶ 352 (citing *Ruffin v. Congressional Budget Office*, 79 F. Supp. 3d 246 (D.D.C. 2015)).

- **Count II:** Plaintiffs assert a claim under the Administrative Leave Act since "Defendants forced Plaintiffs to be on administrative leave" for more than ten (10) workdays.  Compl. ¶ 357.

- **Count III:**  Plaintiffs assert a First Amendment claim by alleging that Defendants removed them from federal service based on their "actual or suspected political affiliation[.]"  Compl. ¶ 367.

- **Count IV:**  Plaintiffs assert that Defendants violated the CSRA by removing Plaintiffs "for reasons personal to the employee" and not by means of a valid RIF.  Compl. ¶¶ 384–85 (internal citation omitted).

- **Count V:**  Plaintiffs assert two claims as part of Count V.  First, Plaintiffs allege that Defendants violated their constitutional right to due process by terminating them for their perceived political affiliation in disregard of USAID's internal rules and regulations.  Compl. ¶ 404.  Second, Plaintiffs allege that Defendants deprived them of a liberty interest by stigmatizing them in connection with their removals.  *Id.* ¶¶ 405-07.

- **Count VI:**  Plaintiffs assert that Defendants OPM, OMB, and DOGE acted ultra vires by allegedly directing USAID to terminate Plaintiffs.  Compl. ¶¶ 411–12.

- **Count VII:**  Plaintiffs assert that Defendants violated the Administrative Procedure Act in that the termination decision was arbitrary and capricious, contrary to constitutional right, and in excess of statutory authority.  Compl. ¶¶ 424–26.

As relief, Plaintiffs seek reinstatement, backpay, benefits, and compensatory relief.  *Id.*, Prayer for Relief ¶¶ A, B, F, G, H, I, K, L.  Plaintiffs also seek injunctive and declaratory relief invalidating the challenged "guidance, orders, and directions that lead to Plaintiffs' [] terminations."  *Id.*, Prayer for Relief ¶ D; *see also id.*, Prayer for Relief ¶¶ C, E, F.  Plaintiffs additionally ask the Court grant leave to add additional plaintiffs.  *Id.*, Prayer for Relief ¶ J.

**LEGAL STANDARD**

To survive a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing that jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006). Although courts accept the complaint's well-pleaded factual allegations as true, *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), they may consider materials outside the complaint to determine whether jurisdiction exists. *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253–54 (D.C. Cir. 2005).

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (cleaned up). On a Rule 12(b)(6) motion, the Court must credit only "well-pleaded" factual allegations, not "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *see also Twombly*, 550 U.S. at 555-56. The Court may also consider materials that "are referred to in the complaint and are integral to" the plaintiff's claims. *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004).

**ARGUMENT**

Plaintiffs' Complaint fails on multiple grounds under Rules 12(b)(1) and 12(b)(6). *First*, Plaintiffs fail to allege that they have exhausted their administrative remedies, as required by the CSRA; naked assertions that they have "temporally exhausted" their mixed-case appeals, Compl. ¶ 80, are not enough to meet their burden of showing district court jurisdiction at the Rule 12 stage. *Second*, independent of Plaintiffs' failure to adequately plead exhaustion of their claims, district court jurisdiction over most of their statutory or regulatory Counts—alleged violations of the

Administrative Leave Act, the APA, and USAID's own internal regulations, as well as alleged *ultra vires* action—is entirely precluded by the CSRA. *Third*, Plaintiffs have failed to state a claim under Rule 12(b)(6) as to any of their Counts. Title VII does not authorize claims based on Plaintiffs' "advocacy" theory of liability, and they have failed to allege any factual basis for discrimination based on sex. The same is true of Plaintiffs' First Amendment and Due Process claims and their remaining statutory claims. Plaintiffs' Complaint should therefore be dismissed under Rules 12(b)(1) and 12(b)(6).

## I.    PLAINTIFFS FAIL TO SHOW THEY HAVE EXHAUSTED ANY OF THEIR CLAIMS (ALL COUNTS).

At the outset, Plaintiffs fail to establish district court jurisdiction over their Complaint, having failed to allege even basic compliance with the CSRA's jurisdictional exhaustion requirements. Plaintiffs invoke this Court's subject-matter jurisdiction under the CSRA's mixed-case path to district court review, 5 U.S.C § 7702(e)(1), which means that at the Rule 12 stage, they must sufficiently allege that they have exhausted as to each claim they seek to assert in district court. Plaintiffs have failed to plead even the barest factual allegation that they have done so as to any of their claims, much less all of them.[3]

A basic precondition for invoking district court jurisdiction over a putative mixed-case appeal under 5 U.S.C. § 7702(e)(a)(B) is having filed a mixed-case appeal with the MSPB that satisfies the MSPB's requirements for such an appeal. Any adverse-action appeal to the MSPB "must contain," *inter alia*, "[a] description of the action the agency took and its effective date[]" and "[a] statement of the reasons why the appellant believes the agency action is wrong." 5 C.F.R. Part 1201.24(a). Beyond that, a mixed case appeal also "must state that there was discrimination

---

[3] Plaintiffs' jurisdictional and exhaustion allegations are minimal. *See* Compl. ¶¶ 13, 78-80.

in connection with the matter appealed, and it must state specifically how the agency discriminated against the appellant[.]" *Id*. Part 1201.153(a).

That exhaustion requirement has teeth. The D.C. Circuit has held that "[g]overnment employees alleging discrimination in violation of Title VII or challenging personnel practices prohibited by the [CSRA] must exhaust administrative remedies before bringing their claims to federal court." *Hamilton v. Geithner*, 666 F.3d 1344, 1349 (D.C. Cir. 2012). On that basis, the D.C. Circuit in *Hamilton* affirmed the district court's jurisdictional dismissal of a claim not specified within the plaintiff's underlying EEO complaint. *Id*. at 1349-50. District courts within the D.C. Circuit have likewise held that plaintiffs invoking mixed-case jurisdiction must specifically allege that they have exhausted their claims to overcome Rule 12(b)(1). *See, e.g.*, *Robb v. Rollins*, No. 21-CV-2056 (JDB/GMH), 2025 WL 1580849, at *15 (D.D.C. June 4, 2025), *report and recommendation adopted*, No. CV 21-2056 (JDB/GMH), 2025 WL 2851638 (D.D.C. Oct. 8, 2025) ("A plaintiff who chooses to bring a mixed case before the MSPB must exhaust her claims in that forum."); *Hornsby v. Thompson*, No. 22-cv-1472, 2023 WL 196185, at *3 (D.D.C. Jan. 17, 2023); *Glines v. Dep't of Def.*, No. 24-CV-1222, 2025 WL 1207085, at *6 (D.D.C. Apr. 25, 2025) (dismissing mixed case because plaintiff did not allege that she had exhausted her claims before the EEOC). "To exhaust a discrimination claim before the MSPB, an employee must 'raise his or her claims of discrimination and present evidence in support of those claims' to the Board." *Rollins*, 2025 WL 1580849, at *15 (quoting *Coffman v. Glickman*, 328 F.3d 619, 624 (10th Cir. 2003)). And failure to plead exhaustion precludes jurisdiction. *McIver v. Mattis*, 318 F. Supp. 3d 245, 251 (D.D.C. 2018) (citing *Doak v. Johnson*, 798 F.3d 1096, 1103 (D.C. Cir. 2015)); *see also Rollins*, 2025 WL 1580849, at *17; *Kelly*, 2022 WL 14807447, at *7.

Not only that, Plaintiffs must allege exhaustion for each claim presented. Exhaustion "demands a 'claim-by-claim' analysis." *Kelly v. Raimondo*, No. 20-cv-3203, 2022 WL 14807447, at *7 (D.D.C. Oct. 26, 2022) (quoting *Webster v. Del Toro*, 49 F.4th 562, 567 (D.C. Cir. 2022) (dismissing specific claims in Rehabilitation Act case for failure to exhaust). In *Saulsberry v. Bondi*, for example, the district court dismissed one of the plaintiff's claims for failure to plead that he had exhausted that claim before the agency's Equal Employment Opportunity office under 5 U.S.C. § 7702(e)(1)(A), the parallel provision to the one Plaintiffs rely on here. *Saulsberry v. Bondi*, No. 23-CV-03483 (APM), 2025 WL 958368, at *2 (D.D.C. Mar. 31, 2025) ("The problem for Plaintiff, however, is that he has failed to plead that his EEO complaint included a reprisal claim under the [Whistleblower Protection Act].")

These jurisdictional requirements extends to Plaintiffs' constitutional claims as well. *Weaver v. U.S. Info. Agency*, 87 F.3d 1429, 1433 (D.C. Cir. 1996). "[E]ven for 'claims arising directly under the Constitution,' the CSRA's exhaustion requirement is a 'jurisdictional prerequisite.'" *Turner v. U.S. Agency for Glob. Media*, 502 F. Supp. 3d 333, 366 (D.D.C. 2020) (quoting *Weaver*, 87 F.3d 1433); *see also Steadman v. Gov., U.S. Soldiers' & Airmen's Home*, 918 F.2d 963, 967 (D.C. Cir. 1999) ("When the statutory and constitutional claims are 'premised on the same facts' and the CSRA remedy 'would have been fully effective in remedying the constitutional violation,' exhaustion is mandated." (quoting *Andrade v. Lauer,* 729 F.2d 1475, 1493 (D.C. Cir. 1984))); *Convertino v. U.S. Dep't of Just.*, 393 F. Supp. 2d 42, 48 (D.D.C. 2005) (holding that "this [c]ourt [] cannot take jurisdiction" over a First Amendment retaliation claim "until plaintiff has exhausted his CSRA remedies"); *cf. Am. Fed. Gov. Emps. v. U.S. Dep't of Educ.*, --- F. Supp. 3d ---, 2025 WL 3123707, at *9 (D.D.C. Nov. 7, 2025) (explaining that "[u]nder normal circumstances" a plaintiff must first exhaust a First Amendment challenge under the CSRA).

10

Against that backdrop, Plaintiffs have failed to establish exhaustion at the Rule 12 stage. They allege in conclusory fashion that they have done so, saying in the two-page "Introduction" of their Complaint that they filed mixed-case appeals before the MSPB in May 2025, "asserting both an unlawful termination claim and a violation of federal equal employment opportunity ('EEO') laws." Compl. at 3; *see also* ¶¶ 13, 78-80. But that is it. They neither attach their MSPB appeals nor identify any specific claims they asserted in those appeals. Compl. ¶¶ 12–15. In other words, Plaintiffs fail to allege that they have exhausted any of the claims they bring here. Nor have they provided documentation demonstrating exhaustion. *See* Compl., Exs. 1, 2, 3 (attaching a copy of Plaintiff Greene's RIF notice, a copy of ostensibly all Plaintiffs' notice of placement on administrative leave, and additional guidance regarding DEIA executive order from the acting administrator of USAID).

Because that is a jurisdictional requirement for which Plaintiffs bear the burden of establishing, *Hamilton*, 666 F.3d at 1349, the Court should dismiss the Complaint for lack of jurisdiction as to all Counts.

## II. PLAINTIFFS' ADMINISTRATIVE LEAVE ACT, *MALA FIDE* RIF, *ULTRA VIRES*, AND APA COUNTS (COUNTS II, IV, VI, AND VII) ARE STATUTORILY PRECLUDED.

Independent of Plaintiffs' failure to sufficiently plead exhaustion, *see* Part I, *supra* 8–11, most of their Complaint falls outside the Court's subject-matter jurisdiction because those claims are statutorily channeled away from district courts by the CSRA or because Plaintiffs cannot show standing. District court jurisdiction over Counts II, IV, VI, and VII—all claims arising under statute or regulation—is statutorily precluded under the CSRA. Likewise as to the claim presented as part of Count Five as an alleged *Accardi* violation; although it is styled as a Due Process claim and paired with what appears to be a liberty interest Due Process claim as the other claim in Count

11

Five, it is based on Plaintiffs' reading of USAID regulation or internal policy, and thus also precluded by the CSRA under binding D.C. Circuit authority. Finally, as to all six Counts, Plaintiffs have not pleaded and cannot show any basis for Article III standing to sue any Defendant other than USAID, thus requiring dismissal of all Counts asserted against the State Department, OPM, OMB, and USDS Defendants.

**A. The CSRA Precludes Jurisdiction over Counts Two, Four, Six, and Seven.**

Counts Two, Four, Six, and Seven present statutory claims that are precluded by the CSRA, the comprehensive administrative-judicial review scheme Congress created to govern personnel disputes between career Civil Service employees and their agency-employers. The CSRA broadly precludes district court jurisdiction over statutory claims asserted by personnel within its scheme. *Fed. Law Enforcement Officers Ass'n v. Ahuja*, 62 F.4th 551, 557-67 (D.C. Cir. 2023) ("*FLEOA*"); *Fornaro v. James*, 416 F.3d 63, 66-69 (D.C. Cir. 2005) (Roberts, J.). They should thus be dismissed as to all Defendants as set forth below.

First up is Count Seven, which alleges that Plaintiffs' removals violated the APA. The CSRA's comprehensive review scheme means that this Count is plainly precluded, as the D.C. Circuit has held in case after case. *E.g.*, *FLEOA*, 62 F.4th at 557-67; *Fornaro*, 416 F.3d at 66-69; *Am. Fed'n of Gov't Emps. v. Sec'y of Air Force*, 716 F.3d 633, 636 (D.C. Cir. 2013); *Grosdidier v. Chairman, Broad. Bd. of Governors*, 560 F.3d 495, 497 (D.C. Cir. 2009); *see also Lucas v. Am. Fed'n of Gov't Emps.*, 151 F.4th 370, 384-85 (D.C. Cir. 2025). In *Lucas*, most recently, the D.C. Circuit summarized decades of its precedent in holding that the CSRA and its labor provisions, the Federal Service Labor-Management Relations Statute (FSL-MRS), precluded jurisdiction over APA claims by a federal employee against her union. *Id*. As the court emphasized, "[i]f the CSRA did not preclude APA claims addressing employment disputes, a savvy litigant could recast just

12

about any such dispute with her employer as an APA suit, giving rise to a parallel proceeding in district court. That is why we have repeatedly concluded that plaintiffs 'may not circumvent the [CSRA's] requirements and limitations by resorting to the catchall APA to challenge agency employment actions.'" *Id*. (internal quotations omitted).  Just so as to Count Seven here.[4]

The same holds for Counts Two, Four, and Six.  Count Two alleges that Defendants violated the Administrative Leave Act by placing Plaintiffs on administrative leave for longer than permitted by that statute during the period preceding their removals.  Compl. ¶¶ 356–361.  But that is just the sort of statutory claim the Supreme Court has held precluded by the CSRA, *Fausto*, 484 U.S. at 455 (claims under Back Pay Act precluded by CSRA), and the result should be the same under the FSA.  Likewise as to Count Four, which alleges that Plaintiffs' removals were the product of pretextual RIFs at USAID, Compl. ¶¶ 384–394, and Count Six, which alleges that their removals

---

[4] Viewed differently, review under the APA is available only where "there is no other adequate remedy in a court."  5 U.S.C. § 704.  The requirement that a plaintiff have "no other adequate remedy in court," *id.*, reflects that "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action," *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988).  As the D.C. Circuit has observed, "the alternative remedy need not provide relief identical to relief under the APA, so long as it offers relief of the 'same genre.'" *Garcia v. Vilsack*, 563 F.3d 519, 522 (D.C. Cir. 2009).  Further, a remedy may be adequate even if "the arguments that can be raised [in the alternative proceeding] are not identical to those available in an APA suit." *Elm 3DS Innovations*, 2016 WL 8732315, at *6.  If there exists an alternative adequate judicial remedy, a plaintiff lacks a cause of action under the APA. *See Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 621 (D.C. Cir. 2017); *see also Versata Dev. Corp.*, 959 F. Supp. 2d at 927 (dismissing putative APA claim under Rule 12(b)(6) because decision at issue was not a final agency action and an alternative adequate remedy existed by way of appeal to the Federal Circuit).

Congress has established a detailed statutory scheme for adjudicating disputes that arise in the sphere of federal employment for civil servants.  The CSRA provides a comprehensive "scheme of administrative and judicial review" for resolving both disputes between employees and their federal employers and disputes between unions representing those employees. *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump* (AFGE), 929 F.3d 748, 752 (D.C. Cir. 2019) (regarding the related Federal Service Labor-Management Relations Statute); *see Graham v. Ashcroft*, 358 F.3d 931, 933 (D.C. Cir. 2004) (regarding CSRA more broadly).  Plaintiffs have already engaged with this statutory scheme by bringing a mixed case. *See* Compl. at 3.  Thus, Plaintiffs already have a potential remedy which would provide adequate relief.

were not within Defendants' statutory authority, *id*. ¶¶ 410–417.  By definition, those Counts represent claims that Defendants violated applicable statutes, which means that district court jurisdiction over them is squarely precluded here.[5]

Count Six, which alleges that Defendants acted *ultra vires* in removing Plaintiffs, Compl. ¶¶ 409–417, falls outside of the Court's jurisdiction for an additional reason.  *Ultra vires* claims are generally limited to circumstances where a plaintiff is completely deprived of a means of vindicating her statutory rights and lacks any "alternative procedure" for judicial review.  *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 722 (D.C. Cir. 2022); *see Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 765 (D.C. Cir. 2022) (ultra vires imposes a "demanding standard" because it is based on assumption Congress has not statutorily barred judicial review of agency action).  The strict limitations on nonstatutory review are "nearly insurmountable."  *DOJ v. FLRA*, 981 F.2d 1339, 1343 (D.C. Cir. 1993); *see Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009) (describing such a claim as "essentially a Hail Mary pass" that "rarely succeeds") (Kavanaugh, J.).  Indeed, for such a claim Plaintiffs must plausibly allege that denial of judicial review would "wholly deprive [them] of a meaningful and adequate means of vindicating" their rights.  *Bd. of Governors of the Fed. Reserve Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991).  But Plaintiffs have an adequate means of vindicating their rights through the MSPB and district courts via their mixed case appeal.  *See infra* at 11–12.  By appealing their removals

---

[5] Plaintiffs' factual claims for the basis of Count Four—that Defendants used a RIF to terminate employees based on their political ideology—are also the same in substance as Plaintiffs' constitutional claims at Counts Three and Five.  *Compare* Compl. ¶¶ 165–200 (alleging various statements from nonparties show Plaintiffs were terminated based on their perceived political affiliation) *with* Compl. ¶¶ 252–277 (asserting the RIFs at USAID and subsequent advertisement of positions at the State Department were carried out because of employees' perceived political ideology) *and* Compl. ¶¶ 201–206 (claiming Plaintiffs' removals violated their First, Fifth, and Fourteenth Amendment rights).

to the MSPB (and then filing suit in this Court under 5 U.S.C. § 7702(e)(1)), Plaintiffs themselves obviate any basis for seeking ultra vires review.

For these reasons, the Court lacks jurisdiction over Counts Two, Four, Six, and Seven.

### B. The CSRA Likewise Precludes Jurisdiction over Plaintiffs' "*Accardi*" Claim (Part of Count Five).

As with Counts Two, Four, Six, and Seven, one claim Plaintiffs assert as part of Count Five—their so-called "*Accardi*" claim, Compl. ¶¶ 122-28, 131 (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954)—likewise falls outside of the Court's jurisdiction. Plaintiffs attempt to frame this claim as one arising under constitutional due process, but that framing runs directly against controlling D.C. Circuit authority in *Graham v. Ashcroft*, 358 F.3d 931, 933-36 (D.C. Cir. 2004) (Roberts, J.), and should be dismissed.

The crux of this claim is Plaintiffs' contention that USAID failed to follow its own internal agency "regulations" in terminating them, including by allegedly "prejudging" them, Compl. ¶ 122, and administering its personnel programs "on the basis of partisan affiliation," *id*. ¶¶ 125-28. According to Plaintiffs, because USAID has voluntarily adopted the internal regulations cited in their complaint, any alleged violation of those regulations can be remedied under the Due Process Clause by suit in district court.

There is no basis for Plaintiffs' allegations, but even if there were, there is no remedy within district court jurisdiction other than via the administrative-judicial review pathway set forth in the CSRA, which is unavailable to Plaintiffs. As then-Judge Roberts explained for the D.C. Circuit in *Graham*, this is not a claim sounding in constitutional due process, but a claim under *Vitarelli v. Seaton*, 359 U.S. 535, 539 (1959), "that, quite apart from the Constitution or the APA, the [agency] was required to follow its own internal regulations voluntarily adopted to circumscribe its discretion, but had failed to do so." *Graham*, 358 F.3d at 932-33. At issue in *Graham* was a claim

15

by a special agent with the Federal Bureau of Investigation that the FBI had violated its own binding internal regulations by suspending him for three days without notice and an opportunity to respond beforehand.  Under the CSRA, that relatively minor personnel action carried no statutory right to appeal, but the plaintiff sued in district court anyway, contending that the FBI's alleged violation of its own internal regulations could be remedied there. *Id.* at 932.  The D.C. Circuit held otherwise, citing *Fausto* in explaining that district court jurisdiction over claims that an agency had violated its own regulations were squarely precluded by the CSRA: "It is no answer to invoke the principle that agencies must follow their own regulations. That was, after all, the assertion in *Fausto,* and the Court held that it was trumped by the proposition that agencies cannot purport to confer rights undermining a comprehensive congressional scheme." *Id.* at 935.  That conclusion "should come as no surprise" under *Fausto*, then-Judge Roberts explained: "'[T]he dissent in *Fausto* expressly noted that "[i]n important respects [Fausto's] case is similar to *Vitarelli*."' The majority rejected the dissent's contention that allowing Fausto's claims to proceed would not be disruptive of the comprehensive CSRA scheme, because such claims "will be 'limited to those instances when the agency violates its own regulations,'"—*i.e.,* claims under *Vitarelli*. Even those claims were precluded." *Id*. (cleaned up).

Just so here.  Like the plaintiff in *Graham*, Plaintiffs claim that their removals violated binding, voluntarily adopted USAID regulations, and should be set aside on that basis.  But their attempt to reframe a *Vitarelli* personnel claim as one arising under the Constitution does not make it so, and it falls outside of district court jurisdiction.

### C. The United States Has Not Waived Sovereign Immunity With Respect to Administrative Leave Act Claims. (COUNT II).

Count Two, which alleges that Defendants violated the Administrative Leave Act by placing Plaintiffs on administrative leave for longer than permitted prior to their removals, falls

16

outside the Court's jurisdiction for another reason, as Congress's decision not to create a private right of action to enforce the Act means that it has not waived the United States' sovereign immunity to claims asserted under the Act.

Sovereign immunity bars suits against the United States absent an unequivocal waiver of that immunity. *See Loeffler v. Frank*, 486 U.S. 549, 554 (1988); *Fed. Hous. Admin. v. Burr*, 309 U.S. 242, 244 (1940). The Supreme Court has repeatedly emphasized that such waivers must be "unequivocally expressed" in statutory text and are to be strictly construed in favor of the sovereign. *See, e.g.*, *Lane v. Pena*, 518 U.S. 187, 192 (1996); *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 33 (1992); *FDIC. v. Meyer*, 510 U.S. 471, 475 (1994). Absent a clear waiver, courts lack subject-matter jurisdiction over claims against the federal government. *United States v. Sherwood*, 312 U.S. 584, 586 (1941); *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.").

The Administrative Leave Act does not contain the requisite clear waiver of sovereign immunity. *See* 5 U.S.C. § 6329a. While the statute authorizes federal agencies to place employees on administrative leave in certain circumstances, it is silent as to any private right of action or consent to be sued for alleged violations. *See id*. The D.C. Circuit has held that similar statutes regulating federal employment practices do not waive sovereign immunity unless they explicitly provide for judicial review or damages actions against the United States. *See, e.g.*, *Seed v. Env't Prot. Agency*, 100 F.4th 257, 265–66 (D.C. Cir. 2024) (explaining an express waiver allowing for "appropriate remedies, including reinstatement or hiring of employees with or without backpay" did not extend to monetary damages (quoting 29 U.S.C. § 633a(b)). Because the Administrative

17

Leave Act lacks any language authorizing suits against the government, there is no express waiver of sovereign immunity, and the Court lacks jurisdiction over this claim.

Furthermore, although the Administrative Leave Act authorizes administrative leave for up to ten days, it does not exclude the possibility of longer administrative leave under other authorities. Indeed, the 2024 rule implementing the statute's ten-day limits construes the Act as not impairing the Executive Branch's long-asserted, general authority to place employees on administrative leave purposes other than investigation. *See* 5 C.F.R. § 630.1404(a) (construing § 6329a(b)'s ten-day limit on agencies' ability to "place" employees on leave as limiting "a management-initiated action to put an employee in administrative leave status, with or without the employee's consent, for the purpose of conducting an investigation (as defined in § 630.1502)" and specifying that "[t]he 10-workday annual limit does not apply to administrative leave for other purposes."). Thus, Plaintiffs' placement on administrative leave does not provide them with a cause of action in district court.

### D. Plaintiffs Have Not Pleaded Standing to Sue the State Department, OPM, OMB, or "DOGE" Defendants.

Plaintiffs were appointed, employed, and ultimately terminated by USAID. Yet they sue not just USAID, but the State Department, OPM, OMB, and DOGE, asserting the same claims against all five agencies or entities. They have not adequately pleaded any basis for standing to sue any defendant beyond USAID, and they could not in any event. Each of their claims should thus be dismissed for lack of standing.

Article III standing is a "bedrock constitutional requirement that [the Supreme] Court has applied to all manner of important disputes." *United States v. Texas*, 599 U.S. 670, 675 (2023). It is "built on a single basic idea—the idea of separation of powers." *Id*. The requirement that plaintiffs demonstrate standing "helps safeguard the Judiciary's proper—and properly limited—

18

role in our constitutional system," *id*. at 675-76, by ensuring that federal courts do not become "forums for the ventilation of public grievances" more properly resolved through the democratic process, *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982).

To establish standing, plaintiffs "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Raines v. Byrd*, 521 U.S. 811, 819 (1997). Plaintiffs also "must demonstrate standing for each claim" they seek to press "and 'for each form of relief sought,' even if the various claims are derived from similar facts or raise similar legal questions." *Center for Biological Diversity*, 144 F.4th at 304 (quoting *DaimlerChrysler Corp.*, 547 U.S. at 352). And the "plaintiff's remedy must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 585 U.S. 48, 73 (2018). These limitations work to ensure that federal courts do not sit to "exercise general legal oversight of the Legislative and Executive Branches" but to redress concrete injuries to cognizable interests. *TransUnion*, 594 U.S. at 423-24.

Most of the claims asserted in Plaintiffs' Counts One through Seven challenge their removals from USAID. In support of those claims, they allege that "[a]t all times relevant to the complaint the USAID employed [them] . . . [at] its principal place of business in Washington, D.C.[,]" Compl. ¶ 1; and that USAID terminated them on April 7, 2025, *id*. ¶¶ 7–9. They likewise allege that their removals were issued by USAID. *Id*. ¶ 18. Elsewhere, the complaint details allegations regarding the terms and conditions of their employment by USAID. *See, e.g., id*. ¶¶ 32–47.

By contrast, Plaintiffs' factual allegations regarding non-USAID Defendants suggest no direct role in their conditions of employment or removals. Those allegations describe public

19

comments about USAID itself, unspecified senior USAID personnel, or even federal employees more generally by Administration officials, Compl. ¶¶ 172–189; the President himself, *id*. ¶ 166; and Elon Musk, *id*. ¶ 167–170. None of those allegations suggests meaningful involvement in Plaintiffs' removals by any of the named officials or persons, much less the State Department, OPM, or OMB.

Lacking any such allegations of involvement, Plaintiffs cannot show that any injury-in-fact attributable to their removals from USAID is "fairly traceable" to any non-USAID Defendant. Simply alleging an injury-in-fact fairly traceable to Defendant USAID—Plaintiffs' employer, and by extension, the agency that terminated their employment—cannot suffice to show injury-in-fact fairly traceable to the State Department, OPM, OMB, or their respective agency heads. This basic standing failure encompasses all seven of Plaintiffs' Counts against those Defendants.

Plaintiffs might seek to salvage part of their Count One claim against the State Department, but that would be unavailing. Separate from their First Amendment removal claim, Compl. ¶¶ 363–381, Plaintiffs also allege that Defendants are conditioning future public employment on partisan affiliation, *id*. ¶ 265, and that they must answer four essay questions which "serve as a blanket political loyalty test" before being rehired, *id*. ¶ 271.  Those allegations are conclusory and unfounded. But even had Plaintiffs alleged factual support for such naked contentions beyond a cursory daisy-chain of public statements and unrelated policy developments, *see, e.g.*, *id*. ¶¶ 272-273, they cannot satisfy any element of the three-part standing test to challenge alleged "conditions" on "future employment" for several fundamental reasons. For one, no Plaintiff has alleged any concrete effort to return to federal employment at the State Department (or elsewhere). For another, no Plaintiff has alleged that he or she has been blocked from consideration—or even been so much as frustrated—in any such effort to return to federal employment by any of the

20

statements, policies, or actions alluded to in the Complaint. Without those sorts of factual showings, Plaintiffs cannot establish the injury-in-fact, much less the traceability and redressability, required to demonstrate standing.

Accordingly, Plaintiffs' Counts should be dismissed for lack of standing as to all non-USAID Defendants.

*******

At bottom this Court lacks jurisdiction over any of Plaintiffs' claims.  Plaintiffs have failed to show that they have exhausted any of their claims and Plaintiffs Administrative Leave Act, *mala fide* RIF, *ultra vires*, and APA Counts are statutorily precluded. The Court should therefore dismiss the Complaint pursuant to Rule 12(b)(1).

## III.    PLAINTIFFS FAIL TO STATE A CLAIM AS TO ANY COUNT.

Plaintiffs' counts fail to state a claim under Rule 12(b)(6), and should be dismissed on that basis as well.

As an initial matter, the Complaint fails to state a claim under any theory as to non-USAID Defendants because none of Plaintiffs' allegations suggests meaningful involvement in Plaintiffs' removals by any of the named officials or persons, much less the State Department, OPM, OMB, or USDS.  *See* Part II.D, *supra* at 18–21. Without any factual allegation that any or all of them were removed from their positions at USAID by any Defendant other than USAID, Plaintiffs cannot show that liability is even "conceivable," much less "plausible," against the State Department, OMB, OPM, or USDS, or their respective agency heads.  And without any allegation suggesting that liability is plausible as to the State Department, OMB, OPM, or USDS, Plaintiffs' Counts must be dismissed as to each of those Defendants for failure to state a claim.

21

Beyond that broad pleading failure, Plaintiffs fail to state a viable claim under Title VII (Count I), which does not recognize the advocacy-based theory of discrimination they advance. The Administrative Leave Act does not apply to the leave at issue. Their constitutional arguments fare no better: the First Amendment does not protect speech made as part of Plaintiffs' official duties and Plaintiffs have not plausibly alleged a deprivation of due process. Finally, Plaintiffs' own exhibits demonstrate they were not removed subject to a "sham RIF."

### A.    Count I Fails to State a Claim Under Title VII Or The Rehabilitation Act.

Plaintiffs assert three claims under Title VII:[6] (1) intentional discrimination based on Plaintiffs' advocacy "for the rights of persons in protected classes[,]" Compl. ¶ 333; (2) disparate impact based on race and sex, Compl. ¶ 342; *see also* Compl. ¶ 329; and the creation of a hostile work environment, Compl. ¶ 352.  As an initial matter, Title VII affords no cause of action against any defendant other than "the head of the department, agency, or unit" that took "final action" against each Plaintiff. 42 U.S.C. § 2000e-16(c) (authorizing a civil action "in which . . . the head of the department, agency, or unit, as appropriate, shall be the defendant").  USAID removed Plaintiffs; Plaintiffs' Title VII claims should therefore be dismissed as to all other Defendants (the State Department and Secretary Rubio, OMB and Director Vought, OPM and Director Kupor, and USDS and Acting Administrator Gleason), which cannot be said to have taken any final action as to Plaintiffs.  But even as to USAID, each of Plaintiffs' claims fails as explained below.

---

[6] Plaintiffs also invoke two personnel actions: (1) their placement on paid administrative leave, Compl. ¶ 337; *see also id.*, Ex. 2 at 1 ("you are being placed on excused absence (also known as administrative leave) with pay"); and their eventual removals pursuant to an agency-wide RIF, *id.*; *see also id.*, Ex. 1 at 1.  But courts in this district have previously held "placing an employee on paid administrative leave does not, in and of itself, constitute a materially adverse action for purposes" of Title VII or for a retaliation claim.  *Hornsby v. Watt*, 217 F. Supp. 3d 58, 66 (D.D.C. 2016), *aff'd*, No. 17-5001, 2017 WL 11687516 (D.C. Cir. Nov. 14, 2017).  Defendants, therefore, focus their arguments to Plaintiffs' removals.

### i.  *Title VII and the Rehabilitation Act do not permit Plaintiffs' "advocacy" theory of discrimination.*

Plaintiffs' primary theory of liability is that USAID violated Title VII and the Rehabilitation Act by allegedly removing them in retaliation for their efforts to advocate for civil rights and equal employment opportunity principles as part of their assigned job duties.  Even accepting Plaintiffs' allegations as true under Rule 12(b)(6), though, neither Title VII nor the Rehabilitation Act recognizes such a theory of liability.

Contrary to Count I of the Complaint, Title VII does not speak to punishing workers "based on their actual or perceived support for the Civil Rights Act and the concept of Equal Employment Opportunity."  Compl. ¶ 338.  Title VII's federal sector provision prohibits discrimination based on race, color, religion, sex, or national origin.  *See* 42 U.S.C. § 2000e-16(a) (federal government personnel actions "shall be made free from any discrimination" on those five enumerated grounds).  As to employers other than the federal government, Title VII similarly prohibits discrimination "because of" an individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a).  The Rehabilitation Act similarly prohibits discrimination "solely by reason of . . . disability[.]" 29 U.S.C.A. § 794.  As the Supreme Court has explained, discrimination is "based on" or "because of" a covered characteristic "[i]f the employer intentionally relies in part on an individual employee's [covered characteristic] when deciding to discharge the employee"—that is, "if changing the employee's" covered characteristic "would have yielded a different choice by the employer."  *Bostock v. Clayton County*, 590 U.S. 644, 659-60 (2020).

Thus, Plaintiffs' advocacy theory does not allege discrimination "based on" or "because of" a covered characteristic.[7] *See id*.  As the First Circuit explained in a recent decision under 42

---

[7] Plaintiffs do not allege any of them have a qualifying disability under the Rehabilitation Act.

23

U.S.C. § 2000e-2a, "the race [or sex] of the plaintiff is irrelevant for purposes of [an] 'advocacy' theory of discrimination—all that matters is the race [or sex] of the persons on whose behalf the advocacy is occurring." *Frith v. Whole Foods Market, Inc.*, 38 F.4th 263, 272 (1st Cir. 2022).  The First Circuit's holding and rationale rejecting an advocacy theory of discrimination extend directly to Title VII's federal-sector provision, section 2002-16(a), and because "Title VII's language, as discussed in *Bostock*, forecloses such a theory," *id.*, Count I must be dismissed.[8]

Indeed, Plaintiffs' theory to the contrary would violate "the surplusage canon's directive that a statute not be interpreted in a way that renders any part of it superfluous." *Agnew v. Gov't of the Dist. of Columbia*, 920 F.3d 49, 57 (D.C. Cir. 2019).  Title VII specifically declares it an "unlawful employment practice" for an employer to discriminate against an employee because that employee "has opposed any practice made an unlawful employment practice" by Title VII.  42 U.S.C. § 2000e-3(a).  Plaintiffs do not claim that their alleged advocacy on behalf of racial or sexual minorities consisted of opposing "an unlawful employment practice." *See id.*  Instead, their advocacy theory presumes that Title VII prohibited discrimination on the basis of advocacy for racial or sexual minorities, regardless of whether the advocacy concerned an unlawful employment practice.  If Plaintiffs were right, then there would have been no need for Congress to specifically protect those who advocate in opposition to unlawful employment practices.

This claim under Count One thus fails to state a claim on which relief can be granted under Rule 12(b)(6), and should be dismissed on that basis.

---

[8] For that reason, this Court should not rely on the Sixth Circuit's pre-*Bostock* authority endorsing the advocacy theory of discrimination. *See Barrett v. Whirlpool Corp.*, 556 F.3d 502, 513-14 (6th Cir. 2009); *cf. Sebunya v. Mayorkas*, No. 21-cv-780, 2024 WL 1076809, at *9 n.8 (D.D.C. Mar. 8, 2024) (noting that "[t]he D.C. Circuit has not chosen sides in [the] nascent circuit split" between the First and Sixth Circuits).

### ii. *Plaintiffs do not plausibly allege disparate impact.*

Plaintiffs' second claim under Count One is that USAID's removals disparately impacted women, thus injuring them on the basis of sex. That claim likewise falls short of meeting Plaintiffs' pleading burden under a disparate impact theory. To state a disparate impact claim, "[a]t the motion to dismiss stage, a plaintiff must plausibly allege that a disparity exists and identify a practice or policy that plausibly caused the disparity." *Shanks v. Int'l Union of Bricklayers & Allied Craftworkers*, 134 F.4th 585, 592-93 (D.C. Cir. 2025). "The correct inquiry is whether the policy in question had a disproportionate impact on the minorities in the total group to which the policy was applied." *Greater New Orleans Fair Housing Action Ctr. v. HUD*, 639 F.3d 1078, 1086 (D.C. Cir. 2011). "Common sense and fairness dictate that a plaintiff must, at minimum, allege some statistical disparity, however elementary, in order for the defense to have any sense of the nature and scope of the allegation." *Burford v. Yellen*, 246 F. Supp. 3d 161, 180 (D.D.C. 2017) (citation modified).

Plaintiffs allege no such statistical disparity, even at an elementary level. Plaintiffs' factual allegations include no statistical showing of any such disparity, rudimentary or otherwise. In fact, their allegations suggest precisely the opposite: as Plaintiffs freely admit, all USAID employees received a notice stating that the State Department will "retire USAID's independent operation[,]" which resulted in the termination of "substantially all non-statutory positions at USAID[.]" Compl. ¶ 251 (citing Mem. from Jeremy Lewin, PTDO Deputy Administrator & Chief Operating Officer, USAID, to All USAID Personnel (Mar. 28, 2025) (USAID's Transition to the State Department) (available at https://www.politico.com/f/?id=00000195-de57-dc25-a3b7-

deffc6eb0000).[9]    If substantially *all* USAID employees—irrespective of race, sex, or other protected category—were removed from federal service, then Plaintiffs' disparate impact claims become implausible at best—the opposite of the "plausibility" standard their Complaint must cross to state a disparate impact claim.

Plaintiffs attempt to circumvent this fundamental problem by alleging that USAID eliminated the Office of the Chief Diversity Officer, which was staffed entirely by women at that time, when it eliminated USAID's Civil Rights Office.  Compl. ¶¶ 329, 336; *see also Davis v. D.C.*, 925 F.3d 1240, 1250 (D.C. Cir. 2019) (explaining the elimination of demographically disproportionate departments or offices may give rise to actionable discrimination claim).  But the Office of the Chief Diversity Officer is not the same as the Civil Rights Office.  Plaintiffs allege no demographic information regarding the Civil Rights Office as a whole, so their allegations fail to any alleged statistical disparity, basic or otherwise, and cannot satisfy their pleading burden to cross from alleging a conceivable Title VII disparate impact violation to a plausible one.

### iii.    *Plaintiffs fail to state a claim for hostile work environment.*

Plaintiffs' third claim under Count I is that "Defendants' statements and official actions were designed to . . . create a hostile work environment that no reasonable employee . . . could believe would not result in their harassment and ultimate termination."  Compl. ¶ 352.  This allegation similarly fails to meet Plaintiffs' pleading burden.  To state a hostile-work-environment claim, "a plaintiff must show that his employer subjected him to 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Baloch v. Kempthorne*, 550 F.3d 1191,

---

[9] Plaintiffs' Complaint does not contain a complete citation to Mr. Lewin's memorandum despite discussing it at paragraphs 250–53.

1201 (D.C. Cir. 2008) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  "To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance."  *Id*. (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998)).  "The Supreme Court has made it clear that 'conduct must be extreme to amount to a change in the terms and conditions of employment.'" *George v. Leavitt*, 407 F.3d 405, 416 (D.C. Cir. 2005) (quoting *Faragher*, 524 U.S. at 788.  By adhering to these standards, the Court thereby "ensure[s] that Title VII does not become a general civility code" that involves courts in policing "the ordinary tribulations of the workplace." *Faragher*, 524 U.S. at 788 (citation and internal quotation marks omitted).

Plaintiffs' hostile work environment claim fails for the same reason as their intentional discrimination claims—Title VII does not permit Plaintiffs' "advocacy" theory.  *Compare* Part III.A.i, *supra* at 22–24, *with Baloch*, 550 F.3d at 1201 ("a plaintiff must show that his employer subjected him to *discriminatory* intimidation") (internal quotations omitted) (emphasis added). Furthermore, the totality of the circumstances does not support finding a hostile work environment. Plaintiffs claim "Defendants' statements . . . create[d] a hostile work environment[.]"  Compl. ¶ 352.  But Plaintiffs' proffered statements are overwhelmingly not from Defendants, or even employers/administrators within USAID, but from outside sources. *See, e.g.,* Compl. ¶¶ 166–174 (collecting statements from non-Defendants).  Plaintiffs allege Peter Marocco, then the Deputy Administrator of USAID, "used his position in 2025 to berate and threaten USAID staff[.]" Compl. ¶ 183.  But they do not allege Peter Marocco ever berated them.  These statements further do not implicate Plaintiffs personally.  And finally, Plaintiffs do not allege the statements interfered

with their work performance.  In sum, Plaintiffs' allegations are conclusory at best, and they fall far short of a plausible claim for a hostile work environment.

### B.      Administrative Leave Act (Count II).

Count Two alleges a violation of the Administrative Leave Act ("ALA"), Compl. ¶¶ 133-40), on the basis that Plaintiffs were placed on paid administrative leave for longer than ten workdays prior to their removals.  This Count fails to state a claim for at least two reasons. First, the ALA's ten-workday limit applies only to "investigative leave" for federal employees that are subject to investigation; under OPM regulation, that limit is inapplicable to non-investigative administrative leave. Second, the ALA provides no independent private right of action to enforce its terms, including the alleged ten-workday limit.  Count Two should thus be dismissed.

Federal employees may be placed on administrative leave for investigative purposes for ten workdays, absent the need for an extended investigation. 5 U.S.C. §§ 6329a(b)(1), 6329b(b)(1)(A), and 6329b(b)(3)(A). However, administrative leave may be used for non-investigative purposes, and it is not subject to the ten-workday time limit in such instances. OPM is specifically directed by statute to prescribe regulations for the proper recording of "other leave authorized by law," that is, administrative leave that is not "investigative leave" (if the employee is subject to an investigation) or "notice leave" (if the employee is in a notice period, which begins with notice of a "proposed adverse action against the employee" until the date on which the agency "may take the adverse action."). 5 U.S.C. § 6329b(h)(1)(B)(ii). *See also* 5 U.S.C. §§ 6329b(a)(9), 6329b(b)(1)(A), and 6329b(h)(1)(A).

OPM has clarified by regulation that the "10-workday annual limit does not apply to administrative leave for other purposes," that is, for purposes other than "conducting an investigation." 5 C.F.R. § 630.1404(a). OPM further clarified that "paid administrative leave is

appropriate" where "the absence is in the interest of the agency or of the Government as a whole." 5 C.F.R. § 630.1403(a)(4). One such circumstance for using paid administrative leave is "where the agency component in which the employee works is being eliminated or restructured[.]" OPM, *Guidance on Probationary Periods, Administrative Leave and Details* (January 20, 2025 – revised March 4, 2025) (available at: https://perma.cc/3SH2-ANRN). Since Plaintiffs were not placed on investigative leave, the ten-workday time limit does not apply, thus Plaintiffs cannot invoke a violation of the ALA.

Even if Plaintiffs could show that USAID violated the ALA, they must show that Congress created a private right of action to rectify any violation. *See Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("[P]rivate rights of action to enforce federal law must be created by Congress.") Congress did not do so, meaning that Count Three should be dismissed for this reason as well.

To show intent to create a private right, the statute must use "rights-creating language." *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002); *see also Alexander*, 532 U.S. at 286 ("The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy."). Provisions that "focus on the person regulated rather than the individuals protected" or that focus "on the agencies that will do the regulating" do not generally create private rights. *Alexander*, 532 U.S. at 289. Here, neither 5 U.S.C. § 6329a nor 5 U.S.C. § 6329b use such "rights-creating language." This is unsurprising since the Administrative Leave Act of 2016 was primarily intended by Congress as a cost-cutting measure, intended to address "the cost to the taxpayers" of widespread use of administrative leave and "its abuse by some agencies." S. Rep. No. 114-292 at 1 (2016). Congress did not intend thereby

29

to create a mechanism for federal employees to challenge their placement on non-investigatory administrative leave.[10]

Put simply, Congress did not create a private right of action for enforcement of the ALA and Plaintiffs cannot invoke it here.

### C.     First Amendment Retaliation Claims (Count III).

Count III asserts that USAID's removal of Plaintiffs violated their right against "political patronage termination." Compl. ¶¶ 364-81.  Their allegations suggest the somewhat different theory that USAID removed them in retaliation for actual or perceived political affiliation or views in tension with those of the President and his Administration, *id.*, or that it did so in retaliation for "fabulist and unsupported claims that [they and other USAID employees] supported radical, woke or subversive beliefs and agendas[,]" *id.* ¶ 368.  Whatever the theory, Plaintiffs fail to state a claim under the First Amendment.

To satisfy Plaintiffs' pleading burden under Rule 12(b)(6), they must allege facts that suggest that liability is at least plausible under the First Amendment.  To determine whether Plaintiffs' allegations cross from "conceivable" to "plausible," the Court must assess the allegations under the four-part *Pickering* test, which requires finding that: (1) Plaintiffs spoke as "citizen[s] on a matter of public concern"; (2) their "interest in commenting on matters of public concern outweigh the government's interest in promoting the efficiency of the public services it

---

[10] Finally, the general availability of APA review—which Plaintiffs invoke in Count VII, but which they are precluded from suing under by virtue of the CSRA, *see* Part I, *supra* 7–10, makes the threshold for finding a new implied right of action very high. *See, e.g.*, *Godwin v. Sec'y of Housing & Urban Dev.*, 356 F.3d 310, 312 (D.C. Cir. 2004) (per curiam) ("[I]t is difficult to understand why a court would ever hold that Congress, in enacting a statute that creates federal obligations, has implicitly created a private right of action against the federal government, as there is hardly ever any need for Congress to do so given that agency action can normally be reviewed by a district court [under the APA].").

performs through its employees"; (3) their "speech was a substantial or motivating factor in prompting the retaliatory or punitive act"; and (4) they can "refute the government employer's showing, if made, that it would have reached the same decision in the absence of the protected speech." *Breiterman v. United States Capitol Police*, 15 F.4th 1166, 1176 (D.C. Cir. 2021) (internal quotations and citations omitted).  The four-factor test in *Breiterman* reflects how the D.C. Circuit applies the *Pickering* test in balancing the First Amendment rights of federal employees with the government's interest as employer. *See Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty., Illinois*, 391 U.S. 563, 568 (1968) ("The problem in any case is to arrive at a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.").

Government employees have no First Amendment rights in speech undertaken pursuant to their job responsibilities. *Garcetti v. Ceballos*, 547 U.S. 410, 422 (2006); *see also Bowie v. Maddox*, 653 F.3d 45, 47 (D.C. Cir. 2011) ("[O]nly when public employees 'make public statements outside the course of performing their official duties' do they 'retain some possibility of First Amendment protection.'" (quoting *Garcetti*, 547 U.S. at 424)); *Winder v. Erste*, 566 F.3d 209, 214 (D.C. Cir. 2009) ("[I]f the employee spoke 'pursuant to' his official duties, he cannot claim constitutional protection." (quoting *Garcetti*, 547 U.S. at 421)); *Thompson v. Dist. of Columbia*, 530 F.3d 914, 916 (D.C. Cir. 2008) (holding that public employees "receive no First Amendment protection" when they speak "pursuant to their official duties"); *Wilburn v. Robinson*, 480 F.3d 1140, 1150 (D.C. Cir. 2007) ("In the wake of *Garcetti*, courts of appeals have denied First Amendment protection to government employee speech if the contested speech falls within the scope of the employee's uncontested employment responsibilities."). For that reason, a

31

government employee whose job is "to root out discrimination" has no First Amendment right to "comment[] on racial discrimination in the performance of her duties." *Wilburn*, 480 F.3d at 1151. But that is precisely the speech Plaintiffs allege as the basis of their First Amendment Count.

By their own allegations, Plaintiffs concede that the speech they base their claims on was undertaken pursuant to their job responsibilities. For example, "Plaintiff Alzouma's specific duties included . . . reduc[ing] barriers and enhance[ing] opportunities for minorities[.]" Compl. ¶ 37. Similarly, "Plaintiff Greene's specific duties included . . . advanc[ing] the goals of the Civil Rights Act . . . and providing periodic reports on whether USAID . . . programs were . . . in line with Civil Rights Laws[.]" Compl. ¶ 52. And "Plaintiff Cambrel's specific duties included . . . managing and directing the implementation progress of USAID's diversity plans[.]" Compl. ¶ 63.

Under *Garcetti*, those allegations of activity undertaken pursuant to Plaintiffs' job duties do not constitute speech protected by the First Amendment. 547 U.S. at 421-22. At bottom, Plaintiffs' First Amendment Count is predicated on the erroneous position that each of them had a First Amendment-protected interest in speech they undertook pursuant to the responsibilities that USAID assigned them to perform. They did not, and their allegations thus fail to state a claim.

Plaintiffs will likely attempt to pivot from that by suggesting that their allegations show that they were targeted for removal based on their "actual or suspected political affiliation[.]" Compl. ¶ 367. But that would not help them withstand Rule 12(b)(6) either. Nothing alleged in the Complaint creates a plausible inference that Plaintiffs' employers (or anyone in the Executive Branch) had any perception about Plaintiffs' personal beliefs or associations. To be sure, Plaintiffs point to quotes expressing disagreement with DEI *policies* and the ideology underlying them, as well as advocating for eliminating positions responsible for implementing those policies. Compl. ¶¶ 165–84. And they further point to quotes expressing some officials' and independent pundits'

32

(but not Defendants') opinions as to USAID's employees' political leanings.  Compl. ¶¶ 168–90.  But none of the quotes suggests that USAID perceived that Plaintiffs themselves personally adhered to those views, or that any such perception drove USAID's decision to remove them.  After all, it was not just Plaintiffs who were removed as part of agency-wide RIFs; it was the vast majority of USAID employees.

Plaintiffs might also respond by citing Complaint allegations that approximately 300 USAID employees were retained by the State Department due to their "actual or perceived political and ideological affiliation." Compl. ¶¶ 254-55.  But that allegation does not give rise to a plausible risk of liability under the First Amendment for at least one reason: Plaintiffs make it "[u]pon information and belief[.]"  *Id.*  "Pleading on 'information and belief' is permitted . . . only if the pleading sets forth the specific facts upon which the belief is reasonably based."  *HTC Corp. v. IPCom GmbH & Co., KG*, 671 F. Supp. 2d 146, 149 (D.D.C. 2009) (internal citation omitted).[11]  And Plaintiffs point to no specific facts that would support the allegation.  Plaintiffs' bare assertions are insufficient to suggest a plausible violation of the First Amendment.

Finally, Plaintiffs may also cite to the *Elrod/Branti/Rutan* line of cases, which generally hold that "patronage" dismissals of non-political public employees is forbidden by the First Amendment.  *See Elrod v. Burns*, 427 U.S. 347 (1976); *Branti v. Finkel*, 445 U.S. 507 (1980); *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 64-65 (1990) (holding that *Elrod* and *Branti* "decided that the First Amendment forbids government officials to discharge or threaten to

---

[11] Plaintiffs point to a set of four essay questions that they allege OPM requires federal agencies to use for evaluating candidates for open positions under its Merit Hiring Plan, alleging that they are designed to "assess the applicants' political allegiance to the President's political party[.]". Compl. ¶¶ 267–69.  But Plaintiffs do not allege that they or anyone else removed by USAID under its RIFs subsequently applied for a State Department position that required applicants to respond to those questions, much less that the State Department used them to screen out candidates deemed insufficiently loyal to the President, his policies, or the Republican Party.

discharge public employees solely for not being supporters of the political party in power, unless party affiliation is an appropriate requirement for the position involved" and extending that holding to "related political patronage practices" such as "promotion, transfer, recall, and hiring decisions" in *Rutan*). But this line of cases, even if extended to federal employees, does not apply here, because Plaintiffs do not allege that they were dismissed for patronage reasons, that is, to make room for new career employees at USAID with a preferred political affiliation. Rather, Plaintiffs were moved as part of RIFs undertaken to as part of a wide-ranging agency restructuring which largely *eliminated* positions across USAID.

### D. Plaintiffs Fail to State a Claim that They were Wrongfully Terminated through a "Sham" RIF (Count IV).

Count IV asserts that the RIF through which Plaintiffs were removed was a "sham" that constituted a pretext for the actual reason for their targeted removals: what USAID perceived to be their political views. Compl. ¶¶ 384–85. This Count largely tracks their First Amendment Count, and should be dismissed for failure to state a claim for the same reasons. *See* Part III.C, *supra*, 27–31. It fails to state a claim for other reasons as well.

Plaintiffs allege they were removed from service because Defendants claimed they "were engaged in actionable misconduct[.]" Compl. ¶ 393. But such allegations are unsupported, and the exhibits Plaintiffs attached to their complaint substantially undermine them. For instance, the RIF notice transmitted to Plaintiff Greene, Compl., Ex. 2, states that her "position and competitive area are being abolished pursuant to a liquidation under 5 CFR 351.605[.]" Compl., Ex. 2 at 1. [12] The cited regulation allows an agency to "abolish all positions in a competitive area within 180 days[.]" 5 C.F.R. § 351.605. The notice further states the rationale behind the RIF: "to restructure

---

[12] Defendants have no reason to believe that the RIF Notices transmitted to Plaintiffs Alzouma and Cambrel, which were not attached to the Complaint, are materially different.

USAID's operations to better reflect Agency priorities and the foreign policy priorities of the United States." Compl., Ex. 2 at 1. Nothing in that RIF notice can be taken to suggest that Plaintiff Greene was removed for alleged misconduct.

In fact, the RIF notice makes clear that Plaintiff Greene had been determined "eligible for placement assistance under the Agency Career Transition Assistance Program," which provides special selection priority to other Agency offices, registration on the Agency Reemployment Priority List, and information about special selection priority. Compl., Ex. 2 at 2. It also explicitly allowed Plaintiff Greene to contact the Human Resources help desk to review retention registers, RIF regulations, and records affecting her action. Compl., Ex. 2 at 3. And it informed her of her ability to appeal the RIF action to the MSPB. *Id.* Finally, the notice clarifies "[t]his action does not reflect on your service, performance, or conduct. It is being taken solely for the reason stated [your competitive area is being abolished]." *Id.* Clearly, the RIF notices do not support a plausible inference that Plaintiffs were removed "for reasons personal to the employee" or that they were denied the opportunity to respond to the notice.

This Count thus fails to state a claim under Rule 12(b)(6).

### E. Plaintiffs Do Not Plausibly Allege Constitutional Due Process Violations. (COUNT V).

Finally, Plaintiffs' Count V fails to state a claim. This Count contains two apparent claims. First, Plaintiffs claim that USAID violated its own regulations in removing them, thus depriving them of a protected property interest without due process. Compl. ¶¶ 397–402. Second, Plaintiffs appear to claim that they were deprived of a liberty interest in connection with their removals because Defendants "label[ed] them as criminal and immoral," "disqualified [them] from any further Federal employment," and "fixed upon them the stigma of an official defamation of character." *Id.* ¶¶ 404–07. Both claims fail under Rule 12(b)(6).

35

As to their first claim under Count V, Plaintiffs rehash their claims of political reprisal in Count III (asserted under the First Amendment) by alleging that "USAID violated its own regulations by terminating Plaintiffs in a decision that was influenced and animated by Plaintiffs' perceived political affiliation[.]" Compl ¶ 404. But, as explained above, Plaintiffs have no First Amendment rights in speech that is part of their job responsibilities, nor have they plausibly alleged they were removed due to political animus. *See* Part III.C, *supra* at 27–31.

Moreover, as detailed in Part II.B, *supra* at 14–16, this is not a constitutional due process claim, but a *Vitarelli* claim alleging that USAID violated its voluntarily adopted, binding internal regulations in terminating Plaintiffs without following those procedures, and it thus falls outside of district court jurisdiction. *See Graham*, 358 F.3d at 933-36. But even if this claim could be considered one arising under the Due Process Clause, Plaintiffs' contentions are legally incorrect. There is no indication from the Complaint's allegations or otherwise that Plaintiffs received anything short of all the process to which they were entitled under the regulations governing RIFs.

Turning to their second claim under Count Two, to the extent Plaintiffs allege a stigma-plus liberty interest claim, Compl. ¶¶ 404–07, they likewise fail to state a claim under that theory. As a threshold matter, it is unclear from the complaint whether Plaintiffs even attempt to allege a stigma-plus claim. But because they allege that Defendants "fixed upon them the stigma of an official defamation of character," Compl. ¶ 407, Defendants err on the side of caution in construing Count Two and thus explain why Plaintiffs fail to state a claim under such a theory.

A stigma-plus claim "is predicated on a 'combination of an adverse employment action' and 'a stigma or other disability that foreclosed [the plaintiff's] freedom to take advantage of other employment opportunities.'" *Langeman v. Garland*, 88 F.4th 289, 297 (D.C. Cir. 2023) (quoting *O'Donnell v. Barry*, 148 F.3d 1126, 1140 (D.C. Cir. 1998)). "The plaintiff must allege that this

36

combination either 'formally or automatically excluded plaintiff from work on some category of future agency contracts or from other employment opportunities' or had the effect of broadly 'precluding plaintiff from pursuing her chosen career.'" *Id.* (quoting *Kartseva v. Dep't of State*, 37 F.3d 1524, 1528 (D.C. Cir. 1994) (cleaned up). The claim further requires "that there be some statement of an attempt to obtain subsequent employment and a rejection for the job resulting from the alleged stigma or disability." *Id.* (citations omitted).

Plaintiffs fail to state a stigma-plus claim here.  They make no allegation that USAID (or any other Defendant) ever publicly identified any of them individually as having engaged in criminal activity—certainly not by name.  They make no allegation that USAID (or any other Defendant) publicized their removals or released any information to anyone that could be characterized as stigmatizing them.  And they make no allegation that USAID (or any other Defendant) took any action that might cause them to suffer stigma when applying for future employment.  At base, even the allegations they do make, far from being specific, are at most the sort of formulaic recitals that cannot state a claim under *Twombly* and *Iqbal*.  Moreover, Plaintiffs fail to allege that general, unattributed statements "labeling them as criminal and immoral," Compl. ¶ 406, occurred at the same time as their removals, as required for a stigma-plus claim. *Langeman*, 88 F.4th at 297.  Finally, Plaintiffs have failed to allege, as they are required under a stigma-plus claim, that they have attempted to obtain subsequent employment but were rejected because of the alleged stigma or disability.  In short, Plaintiffs fail to state a stigma-plus claim.

## CONCLUSION

For these reasons, the Court should dismiss Plaintiffs' Complaint.

Dated: April 30, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

CHRISTOPHER R. HALL
Assistant Branch Director
Federal Programs Branch

*/s/ Richard C. Giles*
RICHARD C. GILES
Trial Attorney (WY Bar No. 8-7222)
U.S. Department of Justice
Civil Division
Federal Programs Branch
1100 L St., NW, Room 11404
Washington, D.C. 20530
(202) 598-7598
Richard.C.Giles@usdoj.gov

*Counsel for Federal Defendants*

38