**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

GREENE, *et al.*,

Plaintiffs,

v.

UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT, *et al.*,

Defendants.

Civil Action No. 1:25-cv-4217-SLS

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

ARGUMENT ........................................................................................................... 2

I. PLAINTIFFS' SUBMISSION OF A PORTION OF A PUTATIVE MIXED-CASE MSPB APPEAL DOES NOT SATISFY THEIR JURISDICTIONAL EXHAUSTION OBLIGATION UNDER THE CSRA........................................... 3

II. THE CSRA PRECLUDES PLAINTIFFS' STATUTORY CLAIMS (COUNTS II, VI, AND VII). ......................................................................................... 6

III. PLAINTIFFS HAVE NO STANDING TO SUE THE STATE DEPARTMENT, OPM, OMB, OR DOGE DEFENDANTS. ......................................................... 10

IV. PLAINTIFFS FAIL TO STATE A CLAIM AS TO COUNTS I, III, IV AND V. . 13

A. Plaintiffs Fail to State a Claim Under Title VII or The Rehabilitation Act (Count I). ................................................................................. 13

i. *Title VII and the Rehabilitation Act do not permit Plaintiffs' "advocacy" theory of discrimination.* ......................................... 13

ii. *Plaintiffs do not plausibly allege disparate impact.* ..................... 15

iii. *Plaintiffs fail to state a claim for hostile work environment.* ......... 16

B. Plaintiffs Fail to State a CSRA Violation or Political Patronage Dismissal Claim (Counts III and IV). ............................................................ 19

C. Plaintiffs Fail to State a CSRA Violation or a Due Process Violation (Counts IV and V). ........................................................................ 21

D. The Court Should Deny Plaintiffs' Request to Begin Discovery. ............. 24

CONCLUSION ........................................................................................................ 25

## TABLE OF AUTHORITIES

### CASES

*Am. Fed'n of Gov't Emps. v. Sec'y of Air Force*,
716 F.3d 633 (D.C. Cir. 2013) ..... 5

*Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*,
929 F.3d 748 (D.C. Cir. 2019) ..... 4

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
671 F.3d 140 (2d Cir. 2011) ..... 6

*Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*,
297 F. Supp. 2d 165 (D.D.C. 2003) ..... 2

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..... 6, 25

*Baird v. Gotbaum*,
792 F.3d 166 (D.C. Cir. 2015) ..... 22

*Baloch v. Kempthorne*,
550 F.3d 1191 (D.C. Cir. 2008) ..... 20

*Barrett v. Whirlpool Corp.*,
556 F.3d 502 (6th Cir. 2009) ..... 17

*Battle v. FAA*,
393 F.3d 1330 (D.C. Cir. 2005) ..... 7, 8, 9

*Bd. of Governors of the Fed. Rsrv. Sys. v. MCorp Fin., Inc.*,
502 U.S. 32 (1991) ..... 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..... 6, 25

*Benavides v. City of Oklahoma City*,
508 F. App'x 720 (10th Cir. 2013) ..... 10

*Blodgett v. Univ. Club*,
930 A.2d 210 (D.C. 2007) ..... 21

*Bostock v. Clayton County*,
590 U.S. 644 (2020) ..... 5, 17

*Bowie v. Maddox*,
653 F.3d 45 (D.C. Cir. 2011) .................................................................................. 24

*Breaux v. City of Garland*,
205 F.3d 150 (5th Cir. 2000) .................................................................................. 10

*Brown v. Davenport*,
596 U.S. 118 (2022) .................................................................................. 5

*Burford v. Yellen*,
246 F. Supp. 3d 161 (D.D.C. 2017) .................................................................................. 19

*Burlington Indus., Inc. v. Ellerth*,
524 U.S. 742 (1998) .................................................................................. 9

*Butler v. West*,
164 F.3d 634 (D.C. Cir. 1999) .................................................................................. 6

*Carter v. George Wash. Univ.*,
387 F.3d 872 (D.C.Cir.2004) .................................................................................. 25

*Changji Esquel Textile Co. v. Raimondo*,
40 F.4th 716 (D.C. Cir. 2022) .................................................................................. 6

*Conservative Club of Washington v. Finkelstein*,
738 F. Supp. 6 (D.D.C. 1990) .................................................................................. 16

*Dahlia v. Rodriguez*,
735 F.3d 1060 (9th Cir. 2013) .................................................................................. 9, 10

*Diamond Servs. Mgmt. Co., LLC v. Knobbe, Martens, Olson & Bear, LLP*,
339 F.R.D. 334 (D.D.C. 2021) .................................................................................. 24

*Donner v. Fox News Network, LLC*,
No. 23-CV-3401 (CRC), 2024 WL 1758689 (D.D.C. Apr. 24, 2024) .............................. 21, 22

*Durand v. District of Columbia*,
38 F. Supp. 3d 119 (D.D.C. 2014) .................................................................................. 2

*Elgin v. Dep't of Treasury*,
567 U.S. 1 (2012) .................................................................................. 7

*Faragher v. City of Boca Raton*,
524 U.S. 775 (1998) .................................................................................. 20, 22

*FDIC v. Meyer*,
510 U.S. 471 (1994)....................11

*Fed. L. Enf't Officers Ass'n v. Ahuja*,
62 F.4th 551 (D.C. Cir. 2023) .................... 5

*Fornaro v. James*,
416 F.3d 63 (D.C. Cir. 2005).................... 5

*Frith v. Whole Foods Mkt., Inc.*,
38 F.4th 263 (1st Cir. 2022) .................... 17

*Gandola v. FTC*,
773 F.2d 308 (Fed. Cir. 1985) .................... 13

*Garcetti v. Ceballos*,
547 U.S. 410 (2006).................... 24

*George v. Leavitt*,
407 F.3d 405 (D.C. Cir. 2005).................... 22

*Gogel v. Kia Motors Mfg. of Georgia, Inc.*,
967 F.3d 1121 (11th Cir. 2020) .................... 18

*Graham v. Ashcroft*,
358 F.3d 931 (D.C. Cir. 2004).................... 4, 9

*Grant v. Dep't of Treasury*,
194 F. Supp. 3d 25 (D.D.C. 2016) .................... 3

*Greater New Orleans Fair Hous. Action Ctr. v. HUD*,
639 F.3d 1078 (D.C. Cir. 2011).................... 19

*Grosdidier v. Chairman, Broad. Bd. of Governors*,
560 F.3d 495 (D.C. Cir. 2009).................... 5

*Harris v. Forklift Sys., Inc.*,
510 U.S. 17 (1993).................... 20, 23

*Heffernan v. City of Paterson*,
578 U.S. 266 (2016).................... 23, 24

*Hunter v. District of Columbia*,
905 F. Supp. 2d 364, 374 (D.D.C. 2012), *aff'd sub nom. Hunter v. D.C. Gov't*,
No. 13-7003, 2013 WL 5610262 (D.C. Cir. Sept. 27, 2013) ....................11

*Hyatt v. Hirshfeld*,
998 F.3d 1347 (Fed. Cir. 2021) ........ 12

*In re Schering Plough Corp. Intron/Temodar Consumer Class Action*,
678 F.3d 235 (3d Cir. 2012) ........ 6

*Jones v. Se. Pa. Transp. Auth.*,
796 F.3d 323 (3d Cir. 2015) ........ 10

*Joseph v. Leavitt*,
465 F.3d 87 (2d Cir. 2006) ........ 10

*Kloeckner v. Solis*,
568 U.S. 41 (2012) ........ 4, 5

*Lane v. Halliburton*,
529 F.3d 548 (5th Cir. 2008) ........ 6

*Lincoln v. Maketa*,
880 F.3d 533 (10th Cir. 2018) ........ 10

*Losure v. Interstate Com. Comm'n*,
2 M.S.P.B. 361, 2 M.S.P.R. 195 (1980) ........ 25

*Lucas v. Am. Fed'n of Gov't Emps.*,
151 F.4th 370 (D.C. Cir. 2025) ........ 5

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) ........ 6

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973) ........ 25

*Middlebrooks v. Godwin Corp.*,
722 F. Supp. 2d 82 (D.D.C. 2010) ........ 2

*Mullin v. Doe*,
146 S. Ct. 2121 (2026) ........ 14, 15, 16

*Nichols v. S. Illinois Univ.-Edwardsville*,
510 F.3d 772 (7th Cir. 2007) ........ 10

*Park v. Howard Univ.*,
71 F.3d 904 (D.C. Cir. 1995) ........ 3

*Peltier v. United States*,
388 F.3d 984 (6th Cir. 2004) .......... 10

*Perry v. MSPB*,
582 U.S. 420 (2017) .......... 4, 5

*Am. Fed'n of State Cnty. & Mun. Emps., AFL-CIO v. U.S. Off. of Mgmt. & Budget*,
807 F. Supp. 3d 1004 (N.D. Cal. 2025), *appeal dismissed*, No. 25-7998,
2026 WL 809820 (9th Cir. Jan. 2, 2026) .......... 16, 17

*Raines v. Byrd*,
521 U.S. 811 (1997) .......... 14

*Robb v. Rollins*,
No. 21-CV-2056 (JDB/GMH), 2025 WL 1580849 (D.D.C. June 4, 2025),
*report and recommendation adopted*, No. CV 21-2056 (JDB/GMH), 2025 WL
2851638 (D.D.C. Oct. 8, 2025) .......... 2, 3

*Rogers v. Henry Ford Health Sys.*,
897 F.3d 763 (6th Cir. 2018) .......... 10

*Rogers v. Phelan*,
No. 23-3499 (CKK), 2026 WL 865821 (D.D.C. Mar. 30, 2026), *appeal filed*,
*Virgil Rogers v. Hung Cao*, D.C. Cir., June 4, 2026 .......... 4

*Román–Oliveras v. P.R. Elec. Power Auth.*,
655 F.3d 43 (1st Cir. 2011) .......... 6

*Rutan v. Republican Party of Illinois*,
497 U.S. 62 (1990) .......... 23, 24

*Sebunya v. Mayorkas*,
No. 21-cv-780, 2024 WL 1076809 (D.D.C. Mar. 8, 2024) .......... 17

*Shanks v. Int'l Union of Bricklayers & Allied Craftworkers*,
134 F.4th 585 (D.C. Cir. 2025) .......... 19

*Silha v. ACT, Inc.*,
807 F.3d 169 (7th Cir. 2015) .......... 6

*Singletary v. Missouri Dep't of Corr.*,
423 F.3d 886 (8th Cir. 2005) .......... 10

*Stalley v. Cath. Health Initiatives*,
509 F.3d 517 (8th Cir. 2007) .......... 6

*Stewart v. Mississippi Transp. Comm'n*,
586 F.3d 321 (5th Cir. 2009) ........ 10

*Stewart v. Nat'l Educ. Ass'n*,
471 F.3d 169 (D.C. Cir. 2006) ........ 3

*Thompson v. District of Columbia*,
530 F.3d 914 (D.C. Cir. 2008) ........ 24

*Thunder Basin Coal Co. v. Reich*,
510 U.S. 200 (1994) ........ 7

*Trudeau v. FTC*,
456 F. 3d 178 (D.C. Cir. 2006) ........ 7

*United States v. Fausto*,
484 U.S. 439 (1988) ........ 4

*United States v. Mitchell*,
463 U.S. 206 (1983) ........ 11

*Vance v. Chao*,
496 F. Supp. 2d 182 (D.D.C. 2007) ........ 13

*Vatel v. All. of Auto. Mfrs.*,
627 F.3d 1245 (D.C. Cir. 2011) ........ 21

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
429 U.S. 252 (1977) ........ 14, 16

*Walker v. McCarthy*,
170 F. Supp. 3d 94 (D.D.C. 2016), *aff'd*, No. 16-5192, 2017 WL 160806
(D.C. Cir. Jan. 3, 2017) ........ 25

*Webster v. Doe*,
486 U.S. 592 (1988) ........ 7

*Wilburn v. Robinson*,
480 F.3d 1140 (D.C. Cir. 2007) ........ 24

*Wilkins v. Am. Exp. Isbrandtsen Lines, Inc.*,
446 F.2d 480 (2d Cir. 1971) ........ 12, 13

*Wilson v. Pena*,
79 F.3d 154 (D.C. Cir. 1996) ........ 3

*Winder v. Erste*,
566 F.3d 209 (D.C. Cir. 2009) ........ 24

*Winslow v. Pulaski Acad.*,
448 F. Supp. 3d 197 (N.D.N.Y. 2020) ........ 10

*Youkelsone v. FDIC*,
910 F. Supp. 2d 213 (D.D.C. 2012), *aff'd*, 560 F. App'x 4 (D.C. Cir. 2014) ........ 4

**STATUTES**

5 U.S.C. § 6329b ........ 12

5 U.S.C. § 7512 ........ 5

5 U.S.C. § 7702 ........ *passim*

5 U.S.C. § 7703 ........ 5

29 U.S.C. § 206(d) ........ 4

29 U.S.C. § 631 ........ 4

29 U.S.C. § 633a ........ 4

29 U.S.C. § 791 ........ 4

29 U.S.C.A. § 794 ........ 17

42 U.S.C. § 2000e-16 ........ 4, 17

42 U.S.C. § 2000e-3 ........ 18

D.C. Code § 2-1401.02(25) ........ 21

**RULES**

Fed. R. Civ. P. 12(b) ........ 6, 25

**ADMINISTRATIVE AND EXECUTIVE MATERIALS**

5 C.F.R. § 630.1403(a)(iv) ........ 12

5 C.F.R. § 630.1404(a) ........ 12

**OTHER AUTHORITIES**

Fatma Tanis, *Pete Marocco tried to upend USAID in 2020 — and failed. In 2025, he dismantled it*, NPR (Mar. 25, 2025), https://www.npr.org/sections/goatsand-soda/2025/03/25/g-s1-50582/usaid-pete-marocco-trump-foreign-aid ........ 15

Jennifer Hansler et al., *Elon Musk said Donald Trump agreed USAID needs to be 'shut down,'* CNN (Feb. 3, 2025), https://www.cnn.com/2025/02/02/politics/usaid-officials-leave-musk-doge ........ 15

Mem. from Jeremy Lewin, PTDO Deputy Administrator & Chief Operating Officer, USAID, to All USAID Personnel (Mar. 28, 2025), https://www.politico.com/f/?id=00000195-de57-dc25-a3b7-26 deffc6eb0000........ 19

OPM, *Guidance on Probationary Periods, Administrative Leave and Details* (January 20, 2025 – revised March 4, 2025), https://perma.cc/3SH2-ANRN ........ 12

OPM, *Initial Guidance Regarding DEIA Executive Orders* (Jan. 21, 2025), https://www.opm.gov/chcoc/latest-memos/initial-guidance-regarding-deia-executive-orders.pdf ........ 13

OPM, *New Data Shows Trump Administration's Progress in Right-Sizing the Federal Bureaucracy* (July 1, 2025), https://www.opm.gov/news/new-data-shows-trump-administration%CA%BCs-progress-in-right-sizing-the-federal-bureaucracy/ ........ 13

## INTRODUCTION

Plaintiffs' Opposition to Defendants' Motion to Dismiss rests on unsupported generalizations about the United States Agency for International Development ("USAID") or career federal employees more broadly, rather than factual allegations or legal arguments specific to Plaintiffs themselves. That over-reliance on generalizations mirrors the allegations and claims laid out in their Complaint, and fails to resolve their pleading deficiencies under Rule 12. In response to Defendants' jurisdictional arguments under the Civil Service Reform Act of 1978 ("CSRA"), Plaintiffs ask the Court to ignore the Complaint's failure to allege exhaustion of their "mixed case" appeal to the Merit Systems Protection Board ("MSPB"). But their opposition attaches an excerpt from their MSPB appeal that likewise mirrors the generalized quality of their Complaint and fails to present the specific claims of discrimination that Plaintiffs seek to present to the Court. Such an appeal does not suffice for exhaustion, even if attaching a document to a brief could cure Plaintiffs' pleading deficiency.

Nor do Plaintiffs show that they have standing to seek the expansive relief they demand against their former employer, USAID, and other government entities. On the merits, their opposition fares no better. Plaintiffs argue unsuccessfully that Title VII protects their duty-related advocacy for minorities; that they were affected by disparate impact under Title VII because their group within a group within USAID was all-female; that isolated public statements critical of past USAID leadership and priorities (some made by persons not even part of the federal government at the time) not even directed at them created a hostile working environment under Title VII. They likewise argue unsuccessfully that their removals as part of a broader reduction-in-force of employees assigned to work on DEI policies and efforts constituted partisan political retaliation under the First Amendment. At bottom, Plaintiffs suggest that their generalized arguments should

carry them past Rule 12 so long as they allege their situation is "close enough" to prohibited discrimination or retaliation for activity protected by the First Amendment. But that is not correct. Plaintiffs have not plausibly alleged any of the claims they assert, and the Court should thus dismiss the Complaint.

## ARGUMENT

The Court should dismiss Plaintiffs' Complaint. As a threshold jurisdictional matter, Plaintiffs may not amend the Complaint by attaching a portion of their putative MSPB mixed-case appeal to their Opposition to the Motion to Dismiss. Even if the Court were to forgive Plaintiffs' jurisdictional pleading defect and credit their putative mixed-case appeal as satisfying the CSRA's exhaustion requirements for mixed-case appeals, it should still dismiss Plaintiffs' statutory Counts II, VI, and VII for lack of subject matter jurisdiction under Rule 12(b)(1), as they are precluded by the CSRA independent of whether Plaintiffs have sufficiently exhausted. In addition, the Court should dismiss the non-USAID Defendants—the Department of State, Secretary of State Marco Rubio (in his official capacity), the Office of Management and Budget ("OMB"), OMB Director Russell Vought (in his official capacity), the United States Office of Personnel Management ("OPM"), OPM Director Scott Kupor (in his official capacity), that United States Department of Government Efficiency ("DOGE"), and Amy Gleason, at relevant times the Acting Administrator of the United States DOGE[1] Service—since Plaintiffs have not alleged how their removals are fairly traceable to these non-employing agencies.

[1] Defendants note that "United States Department of Government Efficiency" or "DOGE" is not a proper defendant as it is not an agency. Plaintiffs are likely referring to the "United States DOGE Service" or "USDS" which was established in the Executive Office of the President pursuant to Executive Order 14,158. *See* Exec. Order 14,158, *Establishing and Implementing the President's "Department of Government Efficiency"*, 90 Fed. Reg. 8,441 (Jan. 20, 2025) (§ 3(a) establishing the "United States DOGE Service (USDS)"; § 3(b) establishing a "USDS Administrator" reporting to the "White House Chief of Staff.").

On the merits, the Court should dismiss Plaintiffs' Counts I, III, IV, and V for failure to state a claim under Rule 12(b)(6). Title VII and the Rehabilitation Act do not recognize Plaintiffs' "advocacy" theory of discrimination, and Plaintiffs have not plausibly alleged a disparate impact or hostile work environment. Plaintiffs further fail to state a claim for political patronage under the First Amendment, because they cannot show the DEI advocacy efforts they undertook pursuant to their official USAID job duties constituted protected speech.

## I. PLAINTIFFS' SUBMISSION OF A PORTION OF A PUTATIVE MIXED-CASE MSPB APPEAL DOES NOT SATISFY THEIR JURISDICTIONAL EXHAUSTION OBLIGATION UNDER THE CSRA.

Defendants' opening brief explained why Plaintiffs' Complaint failed to plead the factual basis required for the Court to exercise jurisdiction over their mixed-case appeal under 5 U.S.C. § 7702(a)(1). In short, Plaintiffs alleged next to nothing as to their efforts to present their discrimination claims to the Merit Systems Protection Board ("MSPB") as part of a properly pleaded and filed mixed-case appeal, which falls far short of meeting their burden to plead subject-matter jurisdiction under Rule 12(b)(1). Plaintiffs have now sought to cure that pleading deficiency by attaching a portion of the purported mixed-case appeal that one of them filed with the MSPB. *See* Pls.' MTD Opp., Ex. A, ECF No. 14-1 (hereafter "ECF No. 14"). But that effort fails for at least two reasons.

First, "[i]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) (citation omitted). Plaintiffs failed to include factual allegations that they exhausted their administrative remedies, and seeking to do so via briefing cannot substitute for a well-pleaded complaint. *See Durand v. District of Columbia*, 38 F. Supp. 3d 119, 129 (D.D.C. 2014) (citing *Middlebrooks v. Godwin Corp.*, 722 F. Supp. 2d 82, 87 n.4 (D.D.C. 2010)). The Court

should dismiss Plaintiffs' Complaint without prejudice to refiling an amended complaint that includes the required jurisdictional allegations. *See id*.

Second, even were the Court to determine that the Complaint's failure to plead the necessary factual allegations to establish jurisdiction over their mixed-case appeal could be excused by the submission of a portion of their purported MSPB appeal in support of their opposition brief, review of their attached document reveals that they have not satisfied 5 U.S.C. § 7702(a)(1)'s jurisdictional requirements, because their appeal lacks the required elements to be a statutorily defined "mixed case." The attached document, which Plaintiffs characterize as a "narrative" in support of their appeal, is a sprawling, 49-page document that reads more like a memorandum of law than an MSPB appeal. Of those 49 pages, only seven relate to what might be characterized as discrimination claims, at pages 18 through 24. But within those seven pages, there are no reasonably specific allegations of any adverse action against Plaintiffs with a basis of prohibited discrimination, as required by § 7702(a)(1). Instead, even that portion of Plaintiffs' "narrative" represents a generalized harangue against the administration. For instance, page 22 contends that

> [t]he current Administration has acted and is acting against USAID and its individual employees because of its hostility to DEI, racial and gender identity, and equity. The Administration moved initially, and even in advance of its broader attacks, to shutter all functions and remove all employees who were believed to be involved with DEI policies. It almost immediately changed the terms and conditions of the employment of employees in DEI by placing them on forced leave and stripping them of any duties whatsoever.

ECF No. 14, Ex. A at 22.

Similarly, page 23 includes a generalized conclusion of law: "Clearly the Appellants can establish a claim that they were subject to discrimination, a hostile work environment, and retaliation and reprisal for their actual or perceived advocacy of civil rights and anti-discrimination

policies. *See Muldrow v. City of St. Louis*, 601 U.S. 346 (2024)." *Id.* at 23. The same page concludes that portion of Plaintiffs' "narrative" with a similarly generalized assertion that

> to the extent any aspect of placing employees on administrative leave, blocking reassignment, denying them performance reviews, restricting their access to government databases, and maligning them for their positions or terminating them from their positions (which individually and collectively constitute acts of discrimination, retaliation and reprisal for their actual and perceived support for civil rights) are ingrained in policies, since virtually all of the effected employees are members of protected classes, such a policy, even if neutral in guise, has a disparate impact on persons of protected classes.

*Id*. The remainder of that portion of the narrative wraps up by generally describing (and quoting from) various statutory provisions, MSPB opinions, and judicial decisions. *Id*. at 23-24. But none of it makes any allegations of discrimination specific to Plaintiffs.

The hallmark of the CSRA's mixed-case exhaustion requirement is that the agency be placed on reasonable notice of employees' claims so that it can adequately defend against those claims before any appeal to an Article III court. But Plaintiffs' generalized narrative fails to satisfy that basic requirement, and thus fails to satisfy the requirements for district court jurisdiction under 5 U.S.C. § 7702(a)(1).[2]

---

[2] Plaintiffs suggest they do not need to show exhaustion at all because, in their view, all a mixed-case appeal requires here is that the MSPB did not issue a final decision within 120 days. ECF No. 14 at 11 n.4 ("The Complaint sufficiently alleges in short and plain form that Plaintiffs' MSPB mixed-case appeals have been pending for more than 120 days . . . rendering this case justiciable."). That is incorrect. District courts within the D.C. Circuit have held that plaintiffs invoking mixed-case jurisdiction must allege that they have exhausted their claims to overcome a motion to dismiss. *See, e.g.*, *Robb v. Rollins*, No. 21-CV-2056 (JDB/GMH), 2025 WL 1580849, at *15 (D.D.C. June 4, 2025), *report and recommendation adopted*, No. CV 21-2056 (JDB/GMH), 2025 WL 2851638 (D.D.C. Oct. 8, 2025) ("A plaintiff who chooses to bring a mixed case before the MSPB must exhaust her claims in that forum."). It also misses the point. Waiting 120 days before filing suit in federal district court under 5 U.S.C. § 7702(a)(1) is patently insufficient to establish mixed-case jurisdiction under that provision when the MSPB appeal itself did not adequately allege that plaintiffs suffered an action appealable to the MSPB for which "a basis" was alleged discrimination.

In short, Plaintiffs' jurisdictional argument misconstrues Defendants' position. Defendants do not argue the MSPB needs to return a "judicially reviewable action[,]" 5 U.S.C. § 7702(e)(1), or that Plaintiffs even need to continue their claim with the MSPB for this Court to exercise jurisdiction, *see Wilson*, 79 F.3d at 165 (explaining plaintiffs fulfill their exhaustion requirements if they file a complaint and cooperate with the agency for the specified time period). Defendants argue that Plaintiffs' MSPB appeal and their Complaint alike simply fail to plead sufficient facts for this Court to exercise jurisdiction under 5 U.S.C. § 7702(a)(1), that is, that Plaintiffs' Complaint is "limited in scope to claims that are like or reasonably related to the allegations" contained in their MSPB complaint. *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (citation omitted); *see also* ECF No. 14 at 13. Plaintiffs tacitly acknowledge this requirement and admit their Complaint was deficient. ECF No. 14 at 13 ("Plaintiffs have, therefore, adequately exhausted all their claims *because all of their claims were both presented to the MSPB* and have been pending . . . for more than 120 days.") (emphasis added).

The Court should thus dismiss Plaintiffs' complaint for lack of jurisdiction under Rule 12(b)(1).

## II. THE CSRA PRECLUDES PLAINTIFFS' STATUTORY CLAIMS (COUNTS II, VI, AND VII).

Even if the MSPB appeal "narrative" that Plaintiffs append to their opposition could be deemed sufficient to cure the Complaint's deficient jurisdictional allegations, Counts II, VI, and VII would nonetheless fall outside the Court's jurisdiction. The CSRA provides a comprehensive "scheme of administrative and judicial review" for resolving disputes between employees and their federal employers. *Am. Fed'n of Gov't Emps. ("AFGE"), AFL-CIO v. Trump*, 929 F.3d 748, 752 (D.C. Cir. 2019) (regarding the Federal Service Labor-Management Relations Statute); *see Graham v. Ashcroft*, 358 F.3d 931, 933 (D.C. Cir. 2004) (regarding CSRA more broadly). The

CSRA's comprehensive review scheme broadly precludes statutory claims. *See United States v. Fausto*, 484 U.S. 439, 443–44 (1988). Thus, even if Plaintiffs' MSPB appeals satisfy the jurisdictional requirements to bring a mixed-case appeal to district court, the CSRA plainly precludes their APA, *ultra vires*, and ALA claims (Counts II, VI, and VII).

**Count II.** First, jurisdiction over Plaintiffs' ALA claim is precluded. Plaintiffs argue that their placement on administrative leave constitutes an "adverse action" under the Civil Rights Act. ECF No. 14 at 26. This is critical, according to Plaintiffs, because they are invoking the Court's jurisdiction to "review all 'appealable action[s]' that have been pending before MSPB for more than 120 days[.]" ECF No. 14 at 15. But Plaintiffs apply the wrong statutory standard. Under the correct statutory standard, their ALA claim falls outside district court jurisdiction.

A plaintiff seeking district court review over a statutorily defined mixed case appeal under the CSRA is limited to challenging actions "which the employee . . . may appeal to the [MSPB]," where the employee "alleges that a basis for the action was discrimination prohibited by" one or more enumerated discrimination statutes, including Title VII. 5 U.S.C. § 7702(a)(1). Actions appealable to the MSPB, in turn, are generally limited to major personnel actions such as removal or suspension for more than fourteen days, which are defined by the CSRA's Chapter 75 as "adverse actions." *Id.* § 7512; *United States v. Fausto*, 484 U.S. 439, 446-47 (1988). Critically, placement on administrative leave (under which employees continue receiving their salaries) falls outside the CSRA's statutory definition of "adverse action," and thus is not appealable to the MSPB, meaning that it cannot be part of a mixed-case appeal under 5 U.S.C. § 7702(a)(1); *see also* Defs.' Reply, Ex. A at 2 (MSPB order dismissing Plaintiffs' ALA because it and "no other law, rule, or regulation authorizes" MSPB "jurisdiction over allegations an agency violated the Act.").

Plaintiffs' arguments otherwise represent a red herring that relies on judicial precedent defining the term "adverse action" under Title VII, which is entirely different from the CSRA's statutory definition. As the Federal Circuit has held, for example, an employee's placement on administrative leave is not an appealable action if it does not reduce the employee's "grade or basic pay." *Mattern v. Dep't of Treasury*, 291 F.3d 1366, 1370 (Fed. Cir. 2002). The Court should thus give short shrift to Plaintiffs' extended arguments based on inapposite case law from a different statutory scheme.

To be sure, Plaintiffs were eventually removed from USAID following their initial placements on (paid) administrative leave, *see* Compl., Ex. 1 at 1, ECF No. 1-1, which constituted adverse actions appealable to the MSPB under 5 U.S.C. §§ 7512, 7701(a), 7702(a)(1). But Defendants' point is that a prior placement on administrative leave is not part of a removal, which is appealable to the MSPB under 5 U.S.C. § 7512, and which could form the basis for a mixed-case appeal where the employee "alleges that a basis for the action"—the removal—"was discrimination prohibited by Title VII. 5 U.S.C. § 7702(a)(1). If Plaintiffs properly appealed their removals to the MSPB under § 7702(a)(1), then the Court would potentially have jurisdiction over their claims challenging the removals. But mixed-case jurisdiction over a properly exhausted challenge to an employee's removal does not extend to jurisdiction over a separate personnel action preceding that removal, including a placement on administrative leave.

**Count VI.** Plaintiffs' *ultra vires* claim fares no better. First, their assertion that the MSPB has "as a matter of law . . . forfeited its power to vindicate [Plaintiffs' claims][,]" ECF No. 14 at 16 (citing 5 U.S.C. § 7702(a)), is incorrect. Section § 7702(e)(1) entitles employees to file mixed-case appeals in district court if the MSPB has issued no judicially reviewable decision on their mixed-case appeal within 120 days. The MSPB does not forfeit jurisdiction. *See Butler v. West*,

164 F.3d 634, 642 (D.C. Cir. 1999). Second, they try to foist the burden of disproving the availability of *ultra vires* review on Defendants. ECF No. 14 at 17. But Plaintiffs fail to recognize that, "[t]o prevail on an *ultra vires* claim, the *plaintiff* must establish" express statutory exclusion, absence of alternative procedures, and a plain act in excess of delegated powers or contrary to statute. *Changji Esquel Textile Co. v. Raimondo,* 40 F.4th 716, 722 (D.C. Cir. 2022) (emphasis added). Further, *Plaintiffs* must state a claim which is "plausible[3] on its face[]" at the motion to dismiss stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs' *ultra vires* claim is not plausible because the CSRA itself provides a means for them to assert their mixed-case claim, thus providing an "alternative procedure for review of the statutory claim[,]" *Changji*, 40 F.4th at 722. Plaintiffs themselves acknowledge this. *See* ECF No. 14 at 16.

At bottom, Plaintiffs misunderstand the purpose of *ultra vires* review. *Ultra vires* review exists for that small subset of cases where plaintiffs would be "wholly deprive[d]. . . of a meaningful and adequate means of vindicating" their claims. *Bd. of Governors of the Fed. Rsrv. Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 43 (1991). It imposes a "demanding standard," *Fed. Express Corp. v. U.S. Dep't of Com*., 39 F.4th 756, 765 (D.C. Cir. 2022), that is "nearly insurmountable." *DOJ v. FLRA*, 981 F.2d 1339, 1343 (D.C. Cir. 1993). It is not a freely afforded waiver-of-sovereign-immunity or private-right-of-action, as Plaintiffs seemingly imply. *See* ECF No. 14 at

[3] Though the D.C. Circuit has not extended the *Iqbal-Twombly* plausibility requirement to facial challenges to subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), other circuits have held the standard is appropriate. *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015); *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243–44 (3d Cir. 2012); *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011); *Román–Oliveras v. P.R. Elec. Power Auth.*, 655 F.3d 43, 45 n.3, 49 (1st Cir. 2011); *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008); *Stalley v. Cath. Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007). *But see Maya v. Centex Corp.*, 658 F.3d 1060, 1067–69 (9th Cir. 2011) (declaring that "*Twombly* and *Iqbal* are ill-suited to application in the constitutional standing context").

18 ("at least as to Administrative Leave Act violations, the Defendant's own position on the lack of availability for any statutory review, opens the door for the Court to exercise its *ultra vires* jurisdiction…"). By appealing their removals to the MSPB (and then suing in this Court under 5 U.S.C. § 7702(e)(1)), Plaintiffs obviate any basis for seeking *ultra vires* review.

**Count VII.** Finally, the D.C. Circuit has held time and time again that the CSRA precludes APA claims by federal employees, such as that asserted here. *E.g.*, *Fed. L. Enf't Officers Ass'n v. Ahuja*, 62 F.4th 551, 557-67 (D.C. Cir. 2023); *Fornaro v. James*, 416 F.3d 63, 66-69 (D.C. Cir. 2005); *AFGE v. Sec'y of Air Force*, 716 F.3d 633, 636 (D.C. Cir. 2013); *Grosdidier v. Chairman, Broad. Bd. of Governors*, 560 F.3d 495, 497 (D.C. Cir. 2009); *Lucas v. AFGE*, 151 F.4th 370, 384-85 (D.C. Cir. 2025). Plaintiffs have no argument in rebuttal. *See* ECF No. 14 at 14–5. The Court should thus dismiss Count VII in accord with controlling precedent.

## III. PLAINTIFFS HAVE NO STANDING TO SUE THE STATE DEPARTMENT, OPM, OMB, OR DOGE DEFENDANTS.

To establish standing, plaintiffs "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citation and emphasis omitted). Plaintiffs argue that their removals are traceable to the non-USAID Defendants because the Court can infer from the cited statements in the Complaint Section V(f) that those Defendants directed Plaintiffs' terminations and that they had discriminatory purpose in doing so. ECF No. 14 at 19–20.

The Supreme Court considered and rejected a similar argument in *Mullin v. Doe*, 146 S. Ct. 2121, 2138 (2026), under the Equal Protection Clause. There, the plaintiffs relied on statements made by the President and former Secretary Noem specifically focused on Haitians—and more specific to Haitians than those cited here as to USAID and its personnel—as evidence that the termination of Haiti's Temporary Protected Status ("TPS") was motivated by racial discrimination.

*See id*. at 2149 (Kagan, J. dissenting) (citations omitted). Applying the *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977) standard, a majority of the Court held none of those statements "by either the President or the Secretary was overtly racial, and in substance all expressed policy views that could rest on race-neutral justifications." *Mullin*, 146 S. Ct. at 2138. Though noting such political discourse "would have scandalized the public just a short time ago," it held "they [were] insufficient to show that the termination of Haiti's TPS designation was based on the race" because it could "identify a strong, race-neutral explanation [for the] statements[,]" i.e., "the present administration's general stance on immigration and its obvious antipathy toward past administrations' TPS policies." *Id*. at 2139.

Compare that to Plaintiffs' cited statements. President Trump criticized USAID leadership in what could be characterized as blunt terms. Compl. ¶ 166 (citation omitted). Elon Musk described USAID[4] as "incredibly politically partisan," criticized the focus of its international work, accused it of being a "criminal organization," and described what he characterized as his own efforts to essentially dissolve it as a federal agency. Compl. ¶¶ 167, 169–70 (citation omitted). Stephen Miller, the White House Deputy Chief of Staff for Policy, characterized approximately 2 million federal employees nationwide as "overwhelmingly" politically liberal in terms not even focused on USAID or its employees, mentioning USAID only "as an example." *Id*. ¶¶ 172, 174. Peter Marocco, a former USAID political appointee, made similar comments in 2023, when he was not serving in the federal government. *Id*. ¶ 176. Tim Meisburger, a former USAID bureau head, accused the agency of political bias in a 2023 Heritage Foundation article. Compl. ¶ 186–

[4] Plaintiffs claim that Elon Musk described USAID *employees* as incredibly partisan. Compl. ¶ 167. Plaintiffs misquote the CNN article, which reads "the X owner called USAID 'incredibly politically partisan' and said it has been supporting 'radically left causes. . .'" Jennifer Hansler et al., *Elon Musk said Donald Trump agreed USAID needs to be 'shut down,'* CNN (Feb. 3, 2025), https://www.cnn.com/2025/02/02/politics/usaid-officials-leave-musk-doge.

89. Finally, Russell Vought, prior to becoming Director of OMB, made similar comments about career federal employees writ large. *Id.* ¶ 318 (citation omitted).

Plaintiffs' cited statements are in the same vein as *Mullin*. The Supreme Court found the *Mullin* statements did not support an inference of discrimination because it could "identify a strong, race-neutral explanation" for the statements. *Mullin*, 146 S. Ct. at 2139. Here too, Plaintiffs' cited statements suggest dissatisfaction by high level persons within and outside of federal government with USAID leadership, a general desire to substantially curtail or refocus the agency's mission, and even broad criticisms of federal employees generally. *Compare with Mullin*, 146 S. Ct. at 2138–39. As in *Mullin*, because one can identify "a strong, race-neutral explanation," none of these statements show that *any* USAID employees were removed for their perceived political and ideological bias—much less Plaintiffs. *See id.* at 2139; *see also* Compl. ¶ 190. Peter Marocco and Tim Meisburger's statements are unpersuasive for an additional reason: they are not "contemporary statements" by a decision maker, but were made two years before the events in Plaintiffs' Complaint, when neither person was part of USAID or the federal government more broadly. *See Vill. of Arlington Heights*, 429 U.S. at 268. The statements thus fall short of giving rise to any inference of discrimination.

Plaintiffs contend, without factual basis, that their injury is traceable to OPM because OPM has "effectively taken over USAID's representation before the MSPB, and substituted itself as USAID[.]" ECF No. 14 at 20. This suggestion is both unsupported and incorrect. OPM did not substitute itself as USAID in the MSPB proceedings; OPM is representing USAID in certain administrative appeals before the MSPB pursuant to an interagency agreement. *See* Defs.' Reply, Ex. B at 3. Legal representatives are not liable for the acts of their clients. *Conservative Club of Washington v. Finkelstein*, 738 F. Supp. 6, 11 (D.D.C. 1990) ("[t]he adversarial system cannot

countenance such a rule of liability that has the effect of chilling zealous advocacy."). In any event, the fact that OPM represents USAID before the MSPB does not make Plaintiffs' terminations any more traceable to OPM. Plaintiffs' citation to *American Federation of State County & Municipal Employees v. United States Office of Management & Budget*, 807 F. Supp. 3d 1004, 1042–43 (N.D. Cal. 2025), *appeal dismissed*, No. 25-7998, 2026 WL 809820 (9th Cir. Jan. 2, 2026) does not change this analysis. There, a district court considered an OMB memo urging agencies to "consider" RIFs during the 2025 lapse in appropriations. *Id*. (citation omitted). Setting aside whether this language directed RIFs, the case did not involve the RIFs at USAID or the removals of any agency's DEI personnel. *See id*. at 1004. Plaintiffs' invocation of this case is a quintessential example of their "close enough" approach—so long as the case discussed a RIF, it must have implicated them.

## IV. PLAINTIFFS FAIL TO STATE A CLAIM AS TO COUNTS I, III, IV AND V.

### A. Plaintiffs Fail to State a Claim Under Title VII or The Rehabilitation Act (Count I).

#### *i. Title VII and the Rehabilitation Act do not permit Plaintiffs' "advocacy" theory of discrimination.*

Defendants' opening brief explained that Plaintiffs "advocacy" theory of discrimination is unsupported by caselaw and inconsistent with the Supreme Court's decision in *Bostock v. Clayton County*, 590 U.S. 644 (2020). Defs.' MTD at 23–4. Plaintiffs call this argument "puzzling and baffling," on the notion that the D.C. Circuit has not yet definitively decided whether to recognize an advocacy theory of liability under Title VII. ECF No. 14 at 21; *see also Sebunya v. Mayorkas*, No. 21-cv-780, 2024 WL 1076809, at *9 n.8 (D.D.C. Mar. 8, 2024) (noting that "[t]he D.C. Circuit has not chosen sides in [the] nascent circuit split" regarding advocacy theory). But Plaintiffs do not disagree that to be actionable under Title VII or the Rehabilitation Act, allegedly discriminatory actions must be "based on" or "because of" a covered characteristic. *Compare* ECF No. 14 at 21

*with* Defs.' MTD at 23 (citing 42 U.S.C. § 2000e-16(a); 29 U.S.C.A. § 794). They do not disagree that "based on" or "because of" necessitates that the covered characteristic be attributable to the employee. *Compare* ECF No. 14 at 21 *with* Defs.' MTD at 23 (citing *Bostock*, 590 U.S. at 659-60). They do not disagree the First Circuit has foreclosed their "advocacy theory" in the wake of *Bostock*. *Compare* ECF No. 14 at 21 *with Frith v. Whole Foods Mkt., Inc.*, 38 F.4th 263, 272 (1st Cir. 2022). And they do not dispute that the Sixth Circuit's authority endorsing such an advocacy theory—*see Barrett v. Whirlpool Corp.*, 556 F.3d 502, 513-14 (6th Cir. 2009)—did not consider whether Title VII's language, as discussed in *Bostock*, forecloses such a theory. ECF No. 14 at 21.

Plaintiffs nevertheless urge this Court to adopt the Sixth Circuit's approach. ECF No. 14 at 21. In support of that contention, Plaintiffs cherry-pick a quote from an Eleventh Circuit case, *Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1144 (11th Cir. 2020), which they suggest shows the Eleventh Circuit has also embraced an advocacy theory of liability. ECF No. 14 at 22. Not so. In *Gogel*, Kia fired Gogel for surreptitiously recruiting other employees to sue Kia for discrimination. 967 F.3d at 1132–33. Gogel challenged her termination, arguing retaliation for filing an earlier Equal Employment Opportunity Commission ("EEOC") charge—she did not allege Plaintiffs' advocacy theory. *See id*. at 1133–34. Gogel did claim that her termination violated Title VII because she argued recruiting other employees to sue Kia was itself protected activity under Title VII's opposition clause. *Id*.; *see also* 42 U.S.C. § 2000e-3(a) ("It shall be [] unlawful [] for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter"). Defendants previously explained how Plaintiffs' advocacy theory differs from Title VII's opposition clause. Defs.' MTD at 24. Plaintiffs' Complaint does not invoke the opposition clause because they do not claim their alleged advocacy on behalf of minorities consisted of opposing an unlawful employment practice.

Compl. ¶¶ 333–35. Instead, their advocacy theory presumes that Title VII prohibits discrimination on the basis of advocacy for minorities, *regardless* of whether the advocacy concerned an unlawful employment practice. *Id*. Plaintiffs' citation to *Gogel*, therefore, is inapposite.

***ii. Plaintiffs do not plausibly allege disparate impact.***

Plaintiffs claim Defendants did not cite any authority to support the proposition that Plaintiffs need to provide some statistical disparity showing disparate impact at the motion to dismiss stage. ECF No. 14 at 22. Again, not true. "Common sense and fairness dictate that a plaintiff must, at minimum, allege some statistical disparity, however elementary, in order for the defense to have any sense of the nature and scope of the allegation." Defs.' MTD at 25 (quoting *Burford v. Yellen*, 246 F. Supp. 3d 161, 180 (D.D.C. 2017)). Plaintiffs' claim, that they "only need to allege that the agency action had a disproportionate impact on a recognized class of minorities[,]" itself is unsupported, ECF No. 14 at 22, and, moreover, ignores precedent stating that such an allegation must be *plausible*. *See Shanks v. Int'l Union of Bricklayers & Allied Craftworkers*, 134 F.4th 585, 592-93 (D.C. Cir. 2025).

Plaintiffs' disparate impact claim fails that standard. Plaintiffs "have alleged that they all worked for the Office of the Chief Diversity Officer, and that the Office of the Chief Diversity Officer's closure disparately impacted women because the Office was staffed entirely by women." ECF No. 14 at 22 (citing Compl. ¶¶ 329, 336). Again, Plaintiffs conveniently leave out that *all* USAID employees received a notice stating that the State Department will "retire USAID's independent operation," which resulted in the termination of "substantially all non-statutory positions at USAID[.]" Defs.' MTD at 25 (citing Mem. from Jeremy Lewin, PTDO Deputy Administrator & Chief Operating Officer, USAID, to All USAID Personnel (Mar. 28, 2025) (USAID's Transition to the State Department) (available at

https://www.politico.com/f/?id=00000195-de57-dc25-a3b7-26 deffc6eb0000)); *see also* ECF No. 14 at 22–23. They also fail to mention that the Office of the Chief Diversity Officer was "associated" with the Office of Civil Rights. Compl. ¶ 332. And the Office of Civil Rights was terminated all at once in the same action. Compl. ¶ 336. Plaintiffs alleged no demographic information regarding USAID as a whole, or even regarding the Office of Civil Rights. And so, Plaintiffs lack the elementary demographic information necessary to plead a plausible disparate impact claim. *See Greater New Orleans Fair Hous. Action Ctr. v. HUD*, 639 F.3d 1078, 1086 (D.C. Cir. 2011) ("The correct inquiry is whether the policy in question had a disproportionate impact on the minorities in the *total group* to which the policy was applied.") (emphasis added and citation omitted). The Court should dismiss Plaintiffs' attempt to manufacture a disparate impact claim by cherry-picking a specific group within a specific office within the agency as a whole.

***iii. Plaintiffs fail to state a claim for hostile work environment.***

Plaintiffs misconstrue Defendants' hostile work environment argument, describing Defendants has having argued that "the public statements chronicled in the Complaint cannot serve as a basis for" their claim. ECF No. 14 at 23. Not true. Defendants argued first that the hostile work environment doctrine under Title VII does not recognize Plaintiffs' advocacy theory. Defendants argued second that, even considering the public statements, Plaintiffs' allegations do not lead to a minimally plausible inference of a hostile work environment under the totality of the circumstances. Defs.' MTD at 27. Further, Plaintiffs claim they do not need to allege that the hostile work environment actually impacted their work, suggesting that that is a "nonsensical position" not recognized by the D.C. Circuit. ECF No. 14 at 23.

Plaintiffs are wrong on all counts. As explained in Defendants' Motion to Dismiss, ECF No. 11 at 26–27, "a plaintiff must show that his employer subjected him to 'discriminatory

intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive *to alter the conditions of the victim's employment* and create an abusive working environment.'" *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)) (emphasis added). "To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, *and whether it interferes with an employee's work performance*." *Id.* (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998)) (emphasis added). Plaintiffs' allegations fall short of this standard.

First, as explained above, Title VII does not recognize Plaintiffs' "advocacy" theory. *See supra* Part IV(A)(i) at 17–19. Plaintiffs fail to rebut this argument. *See* ECF No. 14 at 23–24. Even construing Plaintiffs' Complaint and Opposition as alleging a hostile work environment based on political discrimination, *see, e.g.*, Compl. ¶ 171; ECF No. 14 at 23, their pleading cannot survive a motion to dismiss. In *Donner v. Fox News Network, LLC*, No. 23-CV-3401 (CRC), 2024 WL 1758689 (D.D.C. Apr. 24, 2024), Donner claimed that Fox News terminated him for his political views and vocal disagreement with Fox's reporting on the 2020 election and the events of January 6. The district court dismissed Donner's suit, holding that discrimination based on "political affiliation" "is narrowly defined as 'the state of belonging to or endorsing any political party.'" *Id.* at *6 (quoting D.C. Code § 2-1401.02(25)).[5] The Court acknowledged that "Donner's objections to Fox's reporting had a political valence[,]" but found "that is not enough to state a valid claim because [D.C. law] protects 'political affiliations,' not political positions or perspectives." *Id.* at *7; *see also Blodgett v. Univ. Club*, 930 A.2d 210, 221 (D.C. 2007) (holding allegations that a

[5] D.C. district courts "analyze discrimination claims under the D.C. Human Rights Act in the same way that [they] analyze discrimination claims under the federal anti-discrimination laws." *Vatel v. All. of Auto. Mfrs.*, 627 F.3d 1245, 1246 (D.C. Cir. 2011).

plaintiff was terminated for "political reasons" or "politics generally" were insufficient). Since political perspectives were not a protected characteristic, Donner had no claim for hostile work environment. *See Donner*, 2024 WL 1758689 at *8.

Here, Plaintiffs allege that the work they performed pursuant to their official duties at USAID became politically disfavored—not that they were members of a discriminated political party. *See* Compl. ¶¶ 32–68; *see also id*. ¶ 73 ("Plaintiffs were fired in retaliation . . . under the incorrect assumption that working in DEI or DEIA was advancing discrimination itself."). This allegation, at best, falls squarely within the ambit of unprotected "political positions or perspectives." *Donner*, 2024 WL 1758689 at *7. Thus, like *Donner*, Plaintiffs' hostile work environment claim fails since they fail to allege that they suffered a hostile work environment based on a protected characteristic.

Second, even assuming that Plaintiffs' claim was cognizable, they still fail to plead extreme conduct "amount[ing] to a change in the terms and conditions of employment." *George v. Leavitt*, 407 F.3d 405, 416 (D.C. Cir. 2005) (quoting *Faragher*, 524 U.S. at 788). The D.C. Circuit has explained that "name-calling, rude emails, lost tempers and workplace disagreements" are "frequently deem[ed] uncognizable under Title VII." *Baird v. Gotbaum*, 792 F.3d 166, 171 (D.C. Cir. 2015). In *Baird*, the plaintiff cited the following incidents in her hostile work environment claim:

> [Coworker One] verbally assaulted Baird and advanced ominously into her office . . . [Coworker Two] sent an email calling Baird "psychotic" and [Coworker Three] circulated an email suggesting she experienced "litigation induced hallucinations." Baird was falsely accused by [Coworker Four] and another human resources officer of disseminating anonymous flyers . . . Baird was temporarily blocked from sending emails to [Coworker Two and Coworker Five]. Baird learned [Coworker Two] had sent an arbitration file containing her confidential information to a private lawyer. [Coworker 6] said that someone should "overthrow" Baird as union president and then falsely accused her of violating her ethical duties. [Coworker Seven] falsely accused Baird of spreading rumors and . . . yelled at her during a deposition.

> [Coworker Eight] falsely accused Baird of sending a harassing email. That same month, [Coworker Nine] cut Baird out of certain work communications, stormed out of a meeting and refused to complete his work on time . . . [Coworker 6] falsely claimed that a federal judge had referred to Baird as a "cancer" and then verbally assaulted her while pounding his fists on a table.

*Id*. at 169–70. The D.C. Circuit held these actions, although "paint[ing] an unpleasant picture," were insufficient to state a hostile work environment claim. *Id*. at 168, 171. Here, Plaintiffs' alleged incidents, *see supra* at 15–16, fall short of even the plaintiffs' cited statements in *Baird* because those incidents were directed at Baird personally. *See Baird*, 792 F.3d at 169–70. In contrast, the public statements highlighted by Plaintiffs' concerned all of USAID (in particular, its leadership) at their narrowest, *see* Compl. ¶¶ 166–76, and the entire federal workforce at their broadest. *See* Compl. ¶ 318. By making the statements personal, the incidents in *Baird* turned bad actions into something far more focused and personal to the plaintiff. And even then, those incidents were held insufficient to state a hostile work environment claim.

Plaintiffs alternatively contend the alleged hostile work environment interfered with Plaintiffs' work performance because they "were terminated based off those same statements!!" ECF No. 14 at 23 (double exclamation point in original). This argument ignores that courts consider the employees' work performance "on the job[.]" *See Harris*, 510 U.S. at 22. In sum, what Plaintiffs characterize as "vile statements[,]" ECF No. 14 at 23, cannot constitute actionable conduct giving rise to a hostile work environment claim.

### B. Plaintiffs Fail to State a CSRA Violation or Political Patronage Dismissal Claim (Counts III and IV).

As an initial matter, Plaintiffs' factual claims for the basis of Count IV—that Defendants used a RIF as a pretext or "sham" to remove USAID employees based on their political ideology—are also the same in substance as Plaintiffs' constitutional claims at Counts III and V. *Compare* Compl. ¶¶ 165–200 (alleging various statements from nonparties show Plaintiffs were terminated

based on their perceived political affiliation) *with* Compl. ¶¶ 252–277 (asserting the RIFs at USAID and subsequent advertisement of positions at the State Department were carried out because of employees' perceived political ideology) *and* Compl. ¶¶ 201–206 (claiming Plaintiffs' removals violated their First, Fifth, and Fourteenth Amendment rights). Thus, Count IV fails to state a plausible claim for the same reasons their Counts III and V fail to do so under Rule 12(b)(6). *See infra* at 19–23. To the extent Plaintiffs argue Count IV entitles them to discovery, *see* ECF No. 14 at 29–31, that argument is also wrong for the reasons stated below. *See infra* at 24–5.

Plaintiffs invoke the *Elrod*/*Branti*/*Rutan* line of cases to argue all they need show to state a plausible claim is that "the perception of Plaintiffs' political views were a factor in why they were terminated from their position." ECF No. 14 at 28 (citation omitted). This misstates the standard. *Rutan* held that a political patronage claim under the First Amendment requires that "public employees need show only that they were discharged because they were not affiliated with or sponsored by" the dominant political party. *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 71 (1990). The Court explained "that conditioning employment on political activity pressures employees to pledge political allegiance to a party" which "unquestionably inhibits protected belief and association[]" because "[p]olitical belief and association constitute the core of those activities protected by the First Amendment[.]" *Id.* at 69 (citation omitted). Thus, "[t]he constitutional harm at issue . . . consists in large part of discouraging employees—both the employee discharged . . . and his or her colleagues—from engaging in protected activities." *Heffernan v. City of Paterson*, 578 U.S. 266, 273 (2016).

Here, Plaintiffs argue that they were removed for engaging in DEI-focused efforts assigned to them pursuant to their official job duties—not for their political affiliation. ECF No. 14 at 28. Even if Plaintiffs' cited statements could show that Defendants themselves conflated DEI-focused

efforts with "radically left" policies, *id*., that is insufficient to maintain a political patronage claim. "The constitutional harm at issue [in political patronage cases] consists in large part of discouraging employees . . . from engaging in *protected activities*." *Heffernan*, 578 U.S. at 273 (emphasis added). That is why the *Elrod*/*Branti*/*Rutan* line of cases seeks to protect political belief and association—core First Amendment activity. *See Rutan*, 497 U.S. at 69. Plaintiffs' furtherance of DEI policies is not protected by the First Amendment because it was pursuant to Plaintiffs' official duties. *See Garcetti v. Ceballos*, 547 U.S. 410, 422 (2006); *Bowie v. Maddox*, 653 F.3d 45, 47 (D.C. Cir. 2011); *Winder v. Erste*, 566 F.3d 209, 214 (D.C. Cir. 2009); *Thompson v. District of Columbia*, 530 F.3d 914, 916 (D.C. Cir. 2008); *Wilburn v. Robinson*, 480 F.3d 1140, 1150 (D.C. Cir. 2007). At bottom, Plaintiffs' political patronage claim is predicated on the erroneous position that each of them had a First Amendment-protected interest in the DEI-related responsibilities that USAID assigned them to perform as part of their official job duties. *See* Compl. ¶ 327. They did not, and so their allegations fail to state a claim.

### C. Plaintiffs Fail to State a CSRA Violation or a Due Process Violation (Counts IV and V).

Plaintiffs' framing of their Due Process Count as an *Accardi* violation is incorrect. Plaintiffs represent that the D.C. Circuit exercised "independent constitutional jurisdiction" over an *Accardi* claim in a mixed-case appeal in *Battle v. FAA*, 393 F.3d 1330 (D.C. Cir. 2005). ECF No. 14 at 18–19. But *Battle* is inapposite. There, the Federal Aviation Administration ("FAA") terminated Battle based on its conclusion that he was not "disabled" under the Rehabilitation Act. *Battle*, 393 F.3d at 1333. Battle appealed his termination on two fronts. *See id*. First, he invoked the FAA's internal appeals process known as "Guaranteed Fair Treatment" ("GFT"). *Id*. Second, he began counseling with his agency's Equal Employment Opportunity ("EEO") office. *Id*. The GFT's rules prohibited

claims of statutorily prohibited discrimination because the EEO, and later[6] the MSPB, had jurisdiction over those claims. *Id*.

Despite the GFT rules, Battle brought his discrimination claims before both bodies. *Id*. The GFT's neutral arbitrator ignored the FAA's objection that she lacked jurisdiction over Battle's discrimination claims and the FAA terminated her services, sending Battle's case file to the MSPB. *Id*. at 1333–34. The ex-neutral arbitrator issued an opinion for Battle anyways, finding discrimination in his removal process. *Id*. at 1334. The FAA refused to recognize the award and Battle filed suit seeking to enforce it. *Id*. Construing Battle's complaint to raise an *Accardi* claim based on the allegation that the FAA had violated GFT rules by not recognizing the award, the district court assumed a violation but found no prejudice because Battle's EEO lawsuit against the FAA was still pending. *Id*. The district court also rejected Battle's constitutional due process claim on grounds that he did not have a protected interest in pursuing a discrimination claim before the GFT. *Id*. Battle appealed only the denial of his *Accardi* claim. *Id*. The D.C. Circuit considered the merits of Battle's *Accardi* claim but ultimately decided against him holding "he had no right" to pursue his discrimination claims through the GFT, rather than the EEO/MSPB. *Id*. at 1339.

*Battle* is procedurally different from Plaintiffs' mixed-case appeal here. The court in *Battle* considered the merits of Battle's *Accardi* claim because Battle brought a suit seeking to enforce the arbitration award. *Id*. at 1334, 1336. Here, Plaintiffs argue that Defendant USAID violated its regulations when it removed them. Compl. ¶ 404. Had Battle claimed the FAA violated its internal rules when it terminated him rather than by refusing to recognize the award, *Graham v. Ashcroft*

---

[6] In 1995, Congress divested the MSPB of jurisdiction over certain types of FAA adverse personnel actions and authorized the FAA to establish its GFT processes. *Battle*, 393 F.3d at 1333. Congress retroactively restored the MSPB's jurisdiction in 2000, but the GFT appeals process remained at the time of Battle's suit. *Id*. After the 2000 amendment, the MSPB shared jurisdiction with the Equal Employment Opportunity office over mixed-cases. *Id*.

would have controlled and precluded jurisdiction. 358 F.3d at 935. In any event, *Battle's* reasoning supports Defendants' position. Though the *Battle* court did not use the magic words, "Battle's *Accardi* claim is channeled to the MSPB," it's ruling that he "had no right" to assert discrimination claims before the GFT had the same effect. 393 F.3d at 1339. It endorsed both the FAA's argument that the GFT arbitrator did not have jurisdiction and the FAA's move to transfer Battle's case file over to the MSPB holding "such [mixed-cases] were within the purview of . . . the MSPB." *Id*. at 1338–39. And the district court in *Battle* additionally foreclosed Plaintiffs' theory that their *Accardi* claim arises under constitutional due process. 393 F. 3d at 1334; *see also* Compl. ¶¶ 122-28, 131, 396–408. *Battle*, thus, shows Plaintiffs' framing of an *Accardi* claim is meritless.

Further, Plaintiffs' *Accardi* claim does not state a plausible claim for relief. Plaintiffs allege that USAID failed to follow its regulations to administer personnel programs without discrimination as to political affiliation. Compl. ¶ 401. But, as discussed above, Plaintiffs allege they were placed on leave for engaging in DEI policies—not for their political affiliation. *See supra* at 20. And *all* USAID employees received a notice stating that the State Department would retire USAID's independent operation, which resulted in the elimination of the vast majority of non-statutory positions at USAID. *Supra* at 20 (citation omitted). Consistent with the broad approach, Plaintiffs' own RIF notice explicitly states she was removed "to better reflect . . . the foreign policy priorities of the United States." Compl., Ex. 1 at 1. Plaintiffs' factual allegations show that USAID removed them as part of its larger restructuring efforts—not because of their political affiliation.

Finally, Plaintiffs attempt to bolster their stigma-plus claim by rehashing the public statements in the Complaint. ECF No. 14 at 30. But Plaintiffs continue to fail to plead even the most basic elements of a stigma-plus claim. *See* Defs.' MTD at 37. Plaintiffs must allege "that

there be some statement of an attempt to obtain subsequent employment and a rejection for the job resulting from the alleged stigma or disability." *Langeman v. Garland*, 88 F.4th 289, 297 (D.C. Cir. 2023). Plaintiffs have failed to allege that they have attempted to obtain subsequent employment but were rejected, and so they fail to state a stigma-plus claim.

### D. The Court Should Deny Plaintiffs' Request to Begin Discovery.

Plaintiffs ask the Court to allow discovery so they can determine "whether or not the Defendants intentionally manufactured false reasons to justify the termination[.]" ECF No. 14 at 29. "Discovery is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support." *Diamond Servs. Mgmt. Co., LLC v. Knobbe, Martens, Olson & Bear, LLP*, 339 F.R.D. 334, 340 (D.D.C. 2021) (citation omitted). Here, Plaintiffs' "modicum of objective support—" the RIF notice—states the rationale behind the RIF was "to restructure USAID's operations to better reflect Agency priorities and the foreign policy priorities of the United States." Compl., Ex. 1 at 1. Plaintiffs fall back again on their cited statements to try to show objective support, *see* ECF No. 14 at 28 (citing Compl. ¶¶ 168–90), but Defendants have explained why those statements do not give rise to a plausible discrimination claim. *Supra* Part III at 14–17.

Plaintiffs argue Defendants "have the burden of proof and [] persuasion to prove that the RIF was not a sham[.]" ECF No. 14 at 29. Plaintiffs are getting ahead of themselves. The burden shifts to the employer where the plaintiff makes a *prima facie* case of discrimination. *See Walker v. McCarthy*, 170 F. Supp. 3d 94, 104 (D.D.C. 2016), *aff'd*, No. 16-5192, 2017 WL 160806 (D.C. Cir. Jan. 3, 2017) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Defendants maintain Plaintiffs have not made a *prima facie* case because they have not plausibly alleged their termination was based on prohibited discrimination. *See supra* Part IV at 17–23. Furthermore, "where an employer asserts a legitimate, nondiscriminatory reason for an adverse

employment action, the burden-shifting framework disappears[.]" *Walker*, 170 F. Supp. 3d at 104 (citing *Carter v. George Wash. Univ.*, 387 F.3d 872, 878 (D.C.Cir.2004)) (citation modified); *see also Losure v. Interstate Com. Comm'n*, 2 M.S.P.B. 361, 2 M.S.P.R. 366 (1980) ("The agency may establish a *prima facie* case on [it's motivation] by coming forward with evidence showing a RIF undertaken for" a valid reason). Defendants' nondiscriminatory reason for Plaintiffs' termination is the restructure of USAID—the reason contained in Plaintiffs' attached RIF notice. Compl. Ex. 1 at 1. Since there is a non-discriminatory reason, the burden-shifting framework disappears and the Court is left asking whether Plaintiffs' Complaint is facially plausible. *See Iqbal*, 556 U.S. at 678-79; *see also Twombly*, 550 U.S. at 555-56. Plaintiffs' Complaint is not facially plausible for the reasons explained above.

## CONCLUSION

Plaintiffs' allegations are not "close enough" to state a plausible claim for relief. The Court lacks jurisdiction over Plaintiffs' Counts II, VI and VII under Rule 12(b)(1), and Plaintiffs' Counts I, III, IV, and V are so lacking they warrant dismissal under Rule 12(b)(6). For these reasons, the Court should dismiss Plaintiffs' Complaint.

Dated: August 20, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

CHRISTOPHER R. HALL
Assistant Branch Director
Federal Programs Branch

*/s/ Richard C. Giles*
RICHARD C. GILES
Trial Attorney (WY Bar No. 8-7222)
U.S. Department of Justice
Civil Division
Federal Programs Branch
1100 L St., NW, Room 11404
Washington, D.C. 20530
(202) 598-7598
Richard.C.Giles@usdoj.gov

*Counsel for Federal Defendants*